BULLOCK et al. v. CONSUMERS' LUMBER CO.

No. 14,813; November 10, 1892.

31 Pac. 367.

**Jury—Right of Court to Call.**—Though both parties to an action which Code of Civil Procedure, section 592, provides must be tried by a jury, unless a jury trial is waived, waive the trial by jury, the court has the right to call a jury for the trial of the cause.[1]

**Contract for Saw-logs—Testimony as to Party's Understanding.** In an action on a contract for saw-logs sold and delivered the controversy was as to the meaning of a clause in the contract which stated that the logs were "to be scaled by licensed scalers by the quarter scale, with ten per cent deducted for waste." It was claimed that the terms "by the quarter scale" and "for waste" were technical terms, having a particular meaning in the locality where the timber was sold, and testimony of the licensed scalers was introduced to show their meaning. Held, that testimony of the one who made the contract on behalf of defendant, as to what he understood by the terms at the time he made the contract, was inadmissible.

**Contract for Saw-logs—Extrinsic Evidence.**—Defendant offered to prove by the same witness that by reason of his belief as to the terms of the contract he agreed to pay one dollar per thousand more for the logs than he would otherwise have paid, and also offered to show from the "mill tally" the quantity of merchantable lumber obtained from the logs. Held, that this evidence was properly excluded, the price as well as the mode of ascertaining the quantity of lumber being fixed by the contract.

**Contract for Saw-logs—Testimony as to Understanding of Parties.**—Defendant offered to prove that the words "for waste" in the contract were understood by both parties to mean the cut of the saw after the logs had been squared by the quarter scale, with all deductions for rot, rotten knots, sap, and shakes. Held, that the evidence was not admissible, unless defendant could show that those terms in the agreement have a technical meaning, and apply simply to the cut of the saw.

---

[1] Cited and approved in J. L. Roper Lumber Co. v. Elizabeth City Lumber Co., 137 N. C. 442, 49 S. E. 950, the court stating that, irrespective of the authorities and of constitution and statute, it would "be reluctant to hold that it was intended to deprive the trial court of a function so essential to its efficiency and so important to every well-regulated system of judicial procedure."

**Corporation—Admissions of Officers.**—The President and Managing Agent of a corporation have authority to make admissions in regard to the fulfillment of contracts which will be evidence against the corporation.[1]

**Contract for Saw-logs—Decision of Scaler.**—Where a contract provides that the logs shall be scaled by a licensed scaler, an officer authorized to pass on the merchantable character of logs, both parties, in the absence of fraud, are bound by his decision.

**Contract for Saw-logs—Decision of Scaler.**—Even if the purchaser was not bound by the inspection and decision of the scaler, yet if the defects which rendered the logs unmerchantable were plain and readily seen on ordinary observation, and there was no fraud on the part of the seller, and the purchaser, having full opportunity to observe the defects, made no objection, he would be bound by his acceptance.

APPEAL from Superior Court, Humboldt County; G. W. Hunter, Judge.

Action by N. Bullock, assignee of D. H. McFarland. and Harvey Pinkerton, against the Consumers' Lumber Company, to recover for saw-logs furnished defendant corporation under a contract. From a judgment for plaintiff, defendant appeals. Affirmed.

J. D. H. Chamberlin and J. W. Turner for appellant; Ernest Sevier, Coonan & Sevier and Ford & Burnell for respondents.

HAYNES, C.—This action was tried before a jury, plaintiffs had judgment against the defendant (a corporation), and this appeal is taken from the judgment, and from an order denying defendant's motion for a new trial. Both parties waived a jury trial, but the court, against the protest and objection of the defendant, called a jury. An exception was taken by the defendant, and this action of the court is assigned for error. Appellant contends that this action of the court was an irregularity which deprived defendant of a fair

---

[1] **Cited** and followed in Lowe v. Yolo County etc. Water Co., 157 Cal. 513, 108 Pac. 301, where the court, speaking of matter in the testimony, said: "Here was simply a statement by the official head of defendant to an applicant for water as to the condition upon which it would be furnished to him by defendant. It is only fair to assume that it was authorized by the defendant."

trial, and also that it was an error of law occurring at the
trial, and cites sections 214 and 592 of the Code of Civil Pro-
cedure.   Section 592 provides that certain actions therein
named (of which this was one) "must be tried by a jury, un-
less a jury trial is waived or a reference ordered. . . . . In
other cases, issues of fact must be tried by the court, subject
to its power to order any such issue to be tried by a jury."
Section 681 of the Code of Civil Procedure provides how and
when a jury may be waived.   This question was before the
court in Doll v. Anderson, 27 Cal. 249.   The court said, at
page 251: "The court, however, has the right, notwithstand-
ing such waiver, to direct an issue of fact to be tried by a
jury.   Besides this, it would not be presumed that any injury
had accrued to the plaintiff in consequence of the issues of
fact being tried by a jury instead of the court."   The action
there, as in the case at bar, was upon a contract.  In McCar-
thy v. Railroad Co., 15 Mo. App. 385, the action was upon
contract.   Section 3600, Revised Statutes of Missouri of 1879,
provided: "An issue of fact in an action for the recovery of
money only, or of specific real or personal property, must
be tried by a jury, unless a jury trial be waived or a refer-
ence ordered."   The court said: "The right of trial by jury
is deemed a valuable right, and is guaranteed in actions of
law by our constitution.   The effect of the above statute is
merely to allow the parties to waive that right, if they should
see fit to do so; but they do not extend so far as to oblige the
judge to try the issues of fact in a case at law, although re-
quested to do so by both parties, if he should deem it a proper
case for trial by jury. . . . . Not only is there no abuse of
discretion in this case, but, as the question is here presented,
the very statement of it seems to suggest its answer.   The
trial by jury is the constitutional mode of ascertaining the
facts in actions at law.   Both parties were willing to waive
this mode of trial, but the judge was not willing to take upon
himself the burden of determining the facts, for reasons which
were within his own breast, and which he was not bound to
disclose.   What more is it, then, than the case of one party
to an action at law objecting that the facts were tried and
ascertained in the usual mode pointed out by the constitution
and laws?"   Counsel do not cite any authority, and I know
of none, that tends to sustain their contention.

This action was brought to recover a balance alleged to be due from defendant under a contract made September 1, 1890, wherein said lumber company (a corporation) was named as the first party, and McFarland and Pinkerton as the second parties. The question in dispute arose as to the proper construction of that part of said contract which reads as follows: "That said party of the first part agrees to buy from the parties of the second part five hundred thousand (500,000) feet of redwood lumber in logs, said logs to be delivered at the mouth of Dean's slough on or before the first day of January, 1891. Said logs are to be scaled by a licensed scaler, by the quarter scale, with ten per cent deducted for waste; only merchantable timber to be sold or bought under this contract. Said party of the first part agrees to pay for said logs when each 100,000 feet is delivered, and the whole to be paid in five installments. Said parties of the second part agree to sell and deliver said 500,000 feet of merchantable lumber in logs to the party of the first part at the mouth of Dean's slough on or before January 1, 1891."

Plaintiffs under this contract delivered at the place and within the time named a quantity of merchantable saw-logs, which were scaled by licensed scalers by the "quarter scale," and were found to contain, after deducting ten per cent for waste, the quantity required by the contract. The defendant contends that the contract required plaintiffs to furnish logs containing 500,000 feet of merchantable lumber; that, in addition to a deduction of ten per cent of the scale for waste, there must be an allowance for "rot, rotten knots, sap, and shakes," which would require a further reduction of thirty-five to fifty per cent; "that the term 'quarter scale' had a local meaning peculiar to Humboldt bay and nowhere else, and meant that each log should be squared at its smallest end, then deduct for the sawdust and saw-kerf, then throw off for rot, rotten knots, sap, shakes, and other defects, and the residue of the logs merchantable lumber"; and that the word "waste" had a local meaning, and meant the deduction under the "quarter scale" for the saw-kerf.

A large number of exceptions were taken to the rulings of the court upon questions of evidence, and to instructions given to the jury, and to requests to instruct, which were refused. Most of the exceptions, however, go to the question

as to what is the proper construction to be given to the contract, and the decision of that question disposes of nearly all there is in the case, including the objection to any evidence being given by the plaintiffs, upon the ground that "the complaint does not state facts sufficient to constitute a cause of action"; for only upon the theory that the contract required the plaintiffs to furnish "500,000 feet of merchantable lumber in logs" could the complaint be deemed insufficient. Appellant rests its contention mainly upon an alleged local meaning of the term "quarter scale." This term is used in an act of the legislature passed in 1878 (Laws 1877–78, p. 779, sec. 4), entitled "An act for the scaling of logs in the county of Humboldt," as "the rule known in the county of Humboldt as the quarter scale." This act also provided for the appointment by the board of supervisors of three or more surveyors of logs, who were required to take an oath of office, and to give bonds for the faithful performance of their duties, and who were to have the exclusive right to survey for hire all logs that might be required by any buyer or seller; and said act also defined a merchantable redwood log "to be at least sixteen inches in diameter at the smallest end, and at least twelve feet and two inches long."

Plaintiffs called as witnesses the two licensed scalers, McAdam and McMillan, who were employed by the parties and scaled the logs in question, each scaling a part. These witnesses testified in chief that they scaled the logs in question by the quarter scale, and, after deducting ten per cent for waste, they contained 500,000 feet. The scale bills, which were put in evidence, were made in duplicate, and one copy delivered to each of the parties at the time the logs were scaled. Upon cross-examination by defendant's counsel, Mr. McAdam testified that he measured the logs the way he understood the contract, a copy of which he had when he made the survey; that it seemed to him to be very plain how he should measure them. He was asked by counsel for defendant if he did not ignore that clause of the contract which said, "Nothing but merchantable timber to be bought or sold under this contract"; to which the witness replied, "I would understand that to mean merchantable saw-logs. Merchantable timber is not merchantable lumber." The witness, upon cross-examination, explained that "the term 'quarter scale'

has a meaning among loggers, millmen, and scalers. It is a rule laid down to determine the amount of square-edged boards contained in any log, without regard to its quality. By the quarter scale, a log is squared from its smallest end. The balance of the contents of the log is merchantable. If a log is not sound, scale it just the same''; and illustrated the operation as follows: ''This log is forty inches in diameter and twelve feet long. To square that would make it thirty inches in diameter, which would bring it to a square. That would be thirty inches square and twelve feet long, with 900 feet in it. The sawdust would have to come out of that, and saw-scarf. There is generally enough on the outside to make up for the saw-scarf. That is the quarter scale.'' The other scaler, McMillan, upon cross-examination by defendant's counsel, said that the ''quarter scale'' was simply the name of a scale. That under it the diameter of the log was taken, say sixty inches; one-quarter of the diameter was taken off, which would leave forty-five inches, the square of the log. No other witnesses testified as to the meaning of the term ''quarter scale.''

Some questions put to witnesses for defendant, intended to have some bearing upon the meaning of that term, were excluded by the court, and require attention. A. W. Graham, who made the contract in question on behalf of defendant, was called as a witness by defendant, and was asked what he understood, at the time he made the contract, by the terms, ''said logs to be scaled by a licensed scaler, by the quarter scale, with ten per cent deducted for waste.'' An objection by plaintiffs was sustained by the court; and counsel for defendant then offered to prove by the witness that he (the witness) understood that language in the contract to mean that the logs were to be scaled by the quarter scale in accordance with the custom of Humboldt bay; rot, rotten knots, sap, and shakes to be thrown out to make merchantable timber out of the scale, with ten per cent in addition to be thrown out. An objection was sustained to this offer and defendant excepted to both rulings.

The ruling was right. If the contract, through fraud or the mutual mistake of the parties, did not express their intention, it might have been revised on the application of the party aggrieved so as to express that intention (Civ. Code,

sec. 3399) ; but no mistake or misunderstanding was alleged in defendant's answer. Defendant stood upon the interpretation of the contract which the law would have put upon it. The first answer was a general denial; and for a second answer and counterclaim defendant set out the contract in full, and alleged, as a breach on the part of the plaintiffs, that they did not deliver, as required by the terms of said contract, any other or greater amount of "merchantable timber" than 312,000 feet, and claimed damages in the sum of $2,000. It is clear, therefore, that defendant did not claim that anything was omitted from the written contract which was intended to be inserted, or anything inserted that was not intended; for, if the counterclaim means anything, it meant that, under the construction they gave to the contract as written, they were entitled to 500,000 feet of merchantable lumber instead of merchantable logs. The rule is established, not only by the authorities, but by the code, that "when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . . " (Civ. Code, sec. 1639) ; and "technical words are to be interpreted as usually understood by persons in the profession or business to which they relate" (Id., sec. 1645). If, therefore, the terms "quarter scale" and "waste," used in this contract, are to be regarded as technical terms, or as terms having a special signification given to them by local usage, proof can only be made of such local usage, or of the sense in which they were usually understood, and the testimony of a party as to how he understood them is immaterial and incompetent.

Defendant, after having put a question which was excluded, offered to prove by the same witness that, by reason of his belief as to the terms of the contract, he agreed to pay a dollar per thousand more for the logs than he otherwise would have paid. The refusal of the court to permit this evidence was proper, as was also the refusal of the court to permit the defendant to show by the "mill tally" the quantity of merchantable lumber obtained from these logs. The price, as well as the mode of ascertaining the quantity and quality of the lumber, was fixed by the contract, and could not be changed by the belief of the witness, or by the quantity of lumber of a quality not provided for in the contract, however it might be ascertained. Defendant also offered to prove, by

a witness on the stand, that the words "for waste" in the contract were understood by both parties to mean the cut of the saw after the logs had been squared by the quarter scale, with all deductions for rot, rotten knots, sap, and shakes. Upon plaintiff's objecting to the proof, the court ruled that he would sustain the objection, "unless defendant could show that those terms in the agreement have a technical meaning, and apply simply to the cut of the saw." No evidence of that character having been given or offered, the ruling was correct. If the testimony sought to be introduced by defendant were admissible, written contracts would be subject to all the doubts and uncertainties and opportunities for equivocation that attend oral contracts, and the rule in regard to the interpretation of written instruments would be virtually abrogated: Code Civ. Proc., sec. 1856. In the absence of technical words or phrases, whose meaning is obscure, the office of interpretation belongs to the court. In Verzan v. McGregor, 23 Cal., at page 344, the court, after saying that the execution, authenticity, and delivery of a written instrument are usually proved by parol, said: "But evidence of the declarations of the promisee as to his intention in taking the contract in that form, and as to his understanding of the meaning and construction of its terms, could have no effect in giving a construction to the instrument, as the court was bound to construe it according to its terms, and could not be aided by the declarations of the parties made at the time": See, also, Platt v. Jones, 43 Cal. 223; Hewitt v. Dean, 91 Cal. 11, 27 Pac. 423; Dwight v. Insurance Co., 103 N. Y. 341, 57 Am. Rep. 729, 8 N. E. 654.

Mr. McFarland, one of the plaintiffs (whose assignee in insolvency, N. Bullock, was afterward substituted in his stead), was called as a witness on behalf of the plaintiffs, and was asked the following question: "Did either the managing agent of the defendant, or its president or secretary, after the removal of the logs from the slough, ever admit to you the receipt of the five hundred thousand feet of lumber in logs provided to be delivered under this contract?" To this question defendant interposed two objections: "(1) That it was not shown that any person was authorized to make an admission which would bind defendant; and (2) that there was an express warranty upon the face of the contract that survives

the acceptance of the property." The objection was overruled, and the witness answered, "Both of them did." At the time the question was put, there was no evidence to show the authority of these persons to make admissions which would be evidence against the corporation defendant, other than their official designations specified in the question. That the president and managing agent were so authorized, I think may be presumed, inasmuch as a corporation can only act through its agents, and such authority in matters pertaining to the ordinary business of the corporation is implied in the designation of those officers. Whether the secretary may be presumed to have such authority it is not necessary to decide, for the reason that evidence was afterward given tending to show that he, with the president, conducted the business of the company at that time; and besides, the exclusion of the evidence could not have affected the result of the case; so that if the ruling was erroneous, so far as it related to this officer, the error was not prejudicial.

As to the second branch of the objection, the warranty only extended to the species of timber, "redwood," and that "only merchantable timber was to be sold or bought under this contract." The contract, however, provided that the logs should be scaled by a licensed scaler, an officer who was authorized to pass upon the merchantable character of the logs, and by his decision both parties were bound, in the absence of some fraud or artifice practiced upon the vendee by the vendor resulting in injury to the latter. It was not the case of an implied warranty, which arises in cases of sale for future delivery, where the buyer has no opportunity for inspection, but an inspection was provided for and had. But, if defendant was not bound by the inspection and decision of the scaler, yet, if the defects which rendered the logs unmerchantable were patent, plain, and readily seen upon ordinary observation, as the evidence in the case tends to show was the fact, and there was no fraud on the part of the plaintiffs, and the defendant had full opportunity to observe their defects, and made no objection, they would be bound by such acceptance. The conclusions reached as to the exceptions to evidence herein specifically noticed applied to a very large number of other exceptions, which raise the same or similar questions, and also apply to the exceptions taken to the in-

structions given to the jury and to instructions refused. The motion for new trial was properly denied. The evidence was amply sufficient to justify the verdict. It was expressly admitted that the quantity specified in the contract had been received, according to the scale actually made. If that scale, therefore, conformed to a proper construction of the contract, as we think it did, there was no conflict in the evidence as to the full performance of the contract on the part of the plaintiffs. The exceptions to the instruction given to the jury, as well as those refused, all involved the questions we have discussed, and do not require further notice. Finding no prejudicial error in the record, I advise that the judgment and order appealed from be affirmed.

We concur: Belcher, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.