[S. F. No. 4924.   In Bank.—February 3, 1911.]

NORTH ALASKA SALMON COMPANY (a Corporation), Respondent, v. HOBBS, WALL AND COMPANY (a Corporation), Appellant.

Sale—Executory Contract—Express Warranty of Quality—Acceptance with Knowledge of Defect—Right to Damages for Breach.—In this state, under an executory contract of sale, a buyer of per-

sonal property upon an express warranty of quality, has a right to recover damages for a breach of such warranty, notwithstanding he has accepted the goods with knowledge at the time of the acceptance of the defect in quality.

Id.—Effect of Acceptance with Knowledge of Breach of Warranty. —The general rule applicable to all cases of sales of property is that the buyer has an election of remedies for a breach of a contract of warranty. If he knows of the defect at the time performance is offered he may refuse to accept the goods, insist on due performance and sue for damages for non-performance if further performance is not duly offered, and if he has paid for the goods in advance he can recover the amount of money paid thereon as part of the damages. If part performance has been made he may rescind the contract, restore what he has received and recover what he has paid. He need not rescind, or reject the goods, however, but may stand upon the contract, and, relying upon the warranty, may take the goods offered and sue for the damages caused by the breach.

Id.—Warranty of Quality of Boxes—Free from Dampness—Action for Breach—Immaterial Evidence of Dampness in Cans.—In an action to recover damages for breach of an express warranty that certain boxes sold to be packed with canned goods should be of dry stock and free from dampness, in which the theory of the defendant was that the rusting of the cans complained of after they were packed in the boxes furnished by the defendant was not caused by the dampness of the boxes, but by drops of moisture left on the cans by the company manufacturing them, evidence was inadmissible that other cans manufactured by the can company showed moisture, in the absence of a showing or offer to show that such other cans were manufactured in the same manner or by the same process as those supplied for the plaintiff.

Id.—Measure of Damages—Warranty Both of Quality and Fitness. —Such a warranty was one both of quality and of fitness for the purpose intended, and for a breach thereof the buyer was entitled to recover, under section 3314 of the Civil Code, a fair compensation for the loss incurred by an effort in good faith to use it for such purpose.

Id.—Implied Warranty of Fitness May Exist with Express Warranty of Quality.—The making of an express warranty of quality in an executory contract of sale will not exclude an implied warranty of fitness, where the warranty so implied is not only not inconsistent with the express warranty, but entirely in harmony therewith.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing a new trial. Thos. F. Graham, Judge.

The facts are stated in the opinion of the court.

Titus, Wright & Creed, C. G. Dall, and A. M. Kidd, for Appellant.

Naphtaly & Freidenrich, D. Freidenrich, and Milton L. Schmitt, for Respondent.

SHAW, J.—This is an appeal from an order denying defendant's motion for a new trial.

The action was brought to recover damages for the breach of an express warranty in the sale of goods. The plaintiff alleged that in November, 1903, plaintiff and defendant agreed in writing that the defendant should manufacture, sell, and deliver to plaintiff at the premises of the American Can Company · in San Francisco one hundred and twenty thousand salmon boxes, the defendant thereby expressly warranting that all said boxes should be of dry stock and free from dampness, and further agreeing to deliver the same between December, 1903, and April 10, 1904; that defendant at the time knew that plaintiff required for its business in salmon canning a large quantity of empty cans packed in dry boxes for shipment to the canneries of plaintiff on Bristol Bay, by vessels to leave San Francisco on April 15, 1904, so as to reach the canneries at the opening of the fishing season of that year, which would end about August 1st; that defendant delivered ninety-three thousand boxes under the contract, from January 5 to March 3, 1904, at the premises of the American Can Company, for which plaintiff paid the contract price on delivery. It is further averred that a large number of boxes were not of dry stock nor free from dampness, and because thereof the cans packed therein became rusty and unfitted for use, whereby the plaintiff was damaged in the sum of fifteen thousand dollars. The cause was tried by a jury, a verdict was rendered in favor of the plaintiff for thirty-five hundred dollars, and judgment was given accordingly.

The evidence showed the making of the contract, as alleged, that the plaintiff about the same time had engaged the American Can Company to make a large number of cans to be packed in said boxes and directed the defendant to deliver the boxes to said can company for that purpose, that the defendant knew that the can company was to pack the boxes with the cans for the plaintiff's use during the fishing season of 1904,

and that it was a matter of common knowledge that the plaintiff would not be able to procure dry salmon boxes from other dealers or factories in time for the fishing season if the defendant failed to deliver the boxes, or if the boxes delivered were wet or damp. Plaintiff also proved the delivery of ninety-three thousand of the boxes and payment therefor at the contract price. As the deliveries were made the boxes were inspected by plaintiff. At the beginning of the delivery a number of the boxes were found to be not of dry stock nor free from dampness and the defendant was immediately notified thereof and promised that no more of that quality should be delivered. Nevertheless, a large number of the boxes subsequently delivered were not of the quality warranted. They were all, however, inspected by the plaintiff's servants and were taken and used by the plaintiff as cases, within which the cans were packed and shipped to Bristol Bay. The dampness of the boxes caused a large number of the cans to become rusty and unfit for use, whereby plaintiff suffered damages to the amount given by the verdict.

The defendant asked the court to instruct the jury that if the boxes delivered to plaintiff were damp at the time of delivery and that fact was visible and apparent upon inspection and that the plaintiff was aware of the said condition of the boxes, but nevertheless accepted them and appropriated them to its own use without notifying the defendant at the time of receiving them or within a reasonable time thereafter, that they were not accepted as fulfilling the contract, that the plaintiff thereby waived any such defects and could not recover damages on account of them. This instruction was refused and the court instructed the jury that acceptance by the plaintiff and payment of the purchase price did not relieve the defendant from liability under its guaranty, and that if they should find that the boxes were wet and damp at the time of delivery and were accepted and paid for by the plaintiff, they should render a verdict for such damages as the evidence should show were caused by the wet and damp condition of the boxes. The defendant contends that the court erred in refusing to give the instruction asked by it and in instructing the jury as above stated.

The main question in the case, and the one which controls the decision upon the merits, involves the right of a buyer of

personal property upon an express warranty of quality to recover damages for a breach of such warranty, where he has accepted the goods with knowledge of the defect in quality.

The defendant contends that the only remedy of the buyer in the case of an executory contract for the sale of goods with a warranty of quality, where he obtains knowledge of a defect in the quality at the time the goods are offered for delivery, is to reject such goods and insist upon the due performance of the contract, or, if the discovery of the defective quality is made after delivery, to immediately rescind the contract and return or offer to return the goods received and sue for the money paid therefor. The general rule applicable to all cases of sales of property is that the buyer has an election of remedies for a breach of a contract of warranty. If he knows of the defect at the time performance is offered he may refuse to accept the goods, insist on due performance, and sue for damages for non-performance if further performance is not duly offered, and if he has paid for the goods in advance he can recover the amount of money paid thereon as part of the damages. If part performance has been made, he may rescind the contract, restore what he has received and recover what he has paid. He need not rescind, or reject the goods, however, but may stand upon the contract, and, relying upon the warranty, may take the goods offered and sue for the damages caused by the breach.

In New York the rule is that an implied warranty does not survive acceptance, and that if the buyer accepts the goods with knowledge of the fault he thereby waives his right of action for a breach of the warranty (*Reid* v. *Randall*, 29 N. Y. 328, [86 Am. Dec. 305]; *Lestershire* v. *Ritter*, 153 Fed. 573, [82 C. C. A. 527], being a case arising in New York). A case from Georgia is cited by appellant, but as the statute there provides that even an express warranty does not cover patent defects, the decisions of that state are not authority here. In this state the prevailing rule has been followed. In *Polhemus* v. *Heiman*, 45 Cal. 573, there was a warranty that wool sold to be delivered in sacks should be free from burs. Upon examination after delivery the wool was found to be very burry. The seller sued for the price and the buyer set up the breach of warranty in reduction of the price. The court said: "Having a warranty, the defendants were not required

to return or offer to return the wool.  If it was not what it was warranted to be they might have done so and thus have rescinded the contract.  But they were at liberty to retain it and bring an action for the breach of the warranty, or plead the breach in reduction of damages in any action brought by the vendors for the purchase money."  This case is cited and followed in *Hughes* v. *Bray,* 60 Cal. 287.  In *Winans* v. *Sierra L. Co.,* 66 Cal. 66, [4 Pac. 956], there was a sale of an engine with warranty that it was suitable for use on a certain sawmill tramway.  It proved to be unsuitable in some respects. Upon this point the court said: "We think the court correctly instructed the jury, that when plaintiff discovered that the engine was unsuitable for the tramway he was not bound to rescind the contract and make no further effort to carry out its purposes.  He was at liberty to go on and manufacture all the lumber he could under the circumstances, and endeavor in good faith to carry out the contract; and by so doing he would not release or forfeit any claim for damages he might ultimately sustain by any breach of the contract by the defendant."  In *Browning* v. *McNear,* 145 Cal. 276, [78 Pac. 723], it is said: "It is the law of this state, as it is generally elsewhere, that where there is a warranty, and it is discovered after delivery that there has been a breach thereof, the vendee may retain the property and bring an action for the breach of the warranty, or may plead the breach in reduction of damages in an action brought by the vendor for the purchase money."  As will hereinafter appear, the rule is the same where the discovery is made at the time of delivery. The words "after delivery" in the quotation are of no significance.  The distinction was not necessary to the decision in *Browning* v. *McNear.*

The appellant insists that the decision in *Jackson* v. *Porter,* 151 Cal. 32, [90 Pac. 122], is contrary to this doctrine and decisive of this case.  In that action, however, the question of the right of the vendee, after accepting the goods with knowledge of the defects which constituted the breach of the warranty of quality, to sue for or recoup the damages caused by such breach, was not involved or discussed.  That was a suit by the vendor for the price of a pump sold with a warranty as to its capacity, which the buyer was to test by trial. An examination of the record in the case shows that the an-

swer did not aver a breach of the warranty nor claim damages therefor as an offset or in reduction of the price. The defense was that upon trial the pump was found not to comply with the terms of the contract, and that it was not accepted at all. The question was whether or not the buyer had kept it for such an unreasonable time, after knowledge of its defect, as to constitute a waiver thereof, and an acceptance of the pump as it was. In deciding this question it was properly said that when the property bought is tendered or delivered in fulfillment of such a contract the buyer must promptly examine it, and if he finds it defective, must promptly reject it, that if, with knowledge of the defect, he retains it for an unreasonable time, he will be presumed to have accepted it and waived the defect, and that he will then be liable for the contract price. Where no damages are claimed and payment of the price is resisted solely on the ground that the goods were not accepted because they were not of the quality warranted or agreed upon, and, hence, that the title had not passed, the fact of acceptance, actual or constructive, with knowledge, is a complete refutation of such defense. But the rule regarding such a defense has no application to the right of a buyer to rely on a warranty, keep the defective goods, and plead the damages in reduction of the price. By such a plea he affirms the sale and his promise to pay the full price, and seeks only to offset the damages in reduction of the price. (30 Am. & Eng. Ency. of Law, 197.) In the case at bar the price was paid in full before suit. The completed sale and the original obligation to pay the price is conceded. The breach of the warranty is the sole cause of action.

Upon a review of the authorities elsewhere we find that the rule adopted in this state is fully supported. In 30 Am. & Eng. Ency. of Law, after giving the rule with respect to executed contracts of sale, the author, on page 186, refers to executory contracts as follows: "The rule in this class of cases is the same as where the contract is an executed one; the buyer's receipt and retention of the articles is not a waiver of his right of action for a breach of warranty. The fact that in such cases the buyer may rescind the contract and reject the article for the defendant's failure to meet the warranty does not alter the rule; the buyer has an election whether he will rescind the contract or by accepting and retaining the

article, confine himself to his remedy by action on the warranty. The cases sometimes cited as opposing this rule are distinguishable as being either cases in which there was no warranty and the buyer's only remedy was in rescission of the contract, or where the warranty was merely an implied one which would not survive an acceptance, or where the contract of sale contained some special provision to the effect that the acceptance and retention of the article should have the effect of a waiver." This statement of the law is supported by a long list of authorities in a large number of the states. An examination of the decisions cited shows that they fully sustain the text, and that the rule applies as fully where the buyer knows of the defect before acceptance as where he does not discover it until afterward. In Benjamin on Sales (7th ed. 960) Mr. Bennett in his American notes says: "The mere fact of acceptance and use of the goods, even after knowledge of the defect, does not, in America, prevent a resort to an action upon a warranty. The warranty 'survives the acceptance' it is said. The buyer need not return the goods, nor offer to do so, nor give any notice in order to sue upon his warranty." Many cases are cited in support of this statement. In 2 Mechem on Sales, section 1395, that author says: "It is well settled where an express warranty accompanied the contract that while, by accepting the goods, the buyer may lose his right to subsequently reject them, he does not thereby necessarily lose his right to rely upon the warranty. The express warranty survives acceptance, and, upon the great weight of authority, gives the buyer a remedy notwithstanding the defects were visible or open to discovery at the time they were received. The buyer may reject them, but he is not compelled to do so. He may retain them and rely upon the warranty." The exception implied by the statement that he does not "necessarily" lose his right to rely on the warranty, in the foregoing section, is explained in the next section, as referring to cases of sales upon condition, where the property is to be taken upon trial and accepted if found to comply with the contract. In 35 Cyc. 431, the rule is stated in this language: "In most of the jurisdictions the rule is laid down without qualification that the acceptance or retainer of the goods sold does not waive a breach of the warranty, and that it makes no difference whether the contract of sale is executed or execu-

tory, the warranty express or implied, or the defect patent or latent." In support of this the author of the article, Mr. Roger W. Cooley, cites cases from nineteen of the states of the Union, from the federal courts, and English and Canadian cases. The most accurate and complete statement we have found upon the subject is that of Professor Williston in his recent work on Sales, section 485 et seq. The following passage shows his views: "The problem is simply this: Does one party to a contract who has a right to rescind the contract or refuse to go on with it, and who, nevertheless, allows the party in default to continue with the contract and accepts his defective performance, thereby manifest an agreement that the performance so received shall be taken in full satisfaction of all obligations? In the law of contracts, other than contracts to sell or sales, by the clear weight of authority this question must be answered in the negative. If a party in default on a contract is allowed to continue to perform, this is a waiver of any right of rescission or refusal to go on with the contract because of any known default that has already taken place, but the obligation of the party in default is not thereby terminated nor his liability to pay damages for his insufficient performance. There is no reason why the rule in the law of sales should be different. When insufficient performance is received by the buyer he should not be debarred from recovering damages because of the insufficiency, unless he has agreed to accept what has been offered him as full satisfaction of all his rights. There seems no ground for saying that the mere fact that he has taken the goods indicates such assent. . . . The weight of authority supports the view here taken." Discussing the subject further, that author continues: "The hypothesis is, therefore, that the goods which the seller tenders in his performance of the contract might have been refused by the buyer on account of the seller's failure to fulfill his obligation. The obligation of the seller may have been stated either in adjective form as part of the description of the goods, or the broken promise may have been in the form of a collateral warranty, or it may have been a warranty implied by law. . . . It is doubtful if the intention of the parties varies with the form in which the promise is put, whether as part of the description of the goods, or as a strictly collateral warranty. No doubt it is possible, however, for the buyer not

merely to accept title to the goods offered, but to accept the transfer of title as full satisfaction of all the seller's obligations under the contract. Whether the buyer thus agrees to waive deficiencies in performance is logically and should, it seems, be legally a question of fact in each case. What is here insisted upon is that the mere fact that title to the goods has been accepted does not of itself, warrant the conclusion that the buyer has agreed to surrender a claim against the seller because the latter failed to perform his promise. The view here advocated, that acceptance of title does not as a matter of law indicate a waiver of claims for inferior quality of the goods, is supported by a large number of decisions in this country and is the unquestioned law of England," citing many cases. (Sec. 488.)

In section 489 the author refers to the difficulties that beset a buyer where the rule is that, if he accepts the goods knowing that they do not come up to the quality warranted, he thereby waives all right of action upon his warranty. Referring to executory contracts of sale, with warranty, he says: "If the property in the goods has not passed the buyer must not take the goods if they do not conform to the contract, for if he does so he will thereby extinguish all claims on account of such inferiority. It is frequently a very difficult question to determine whether the property had passed in a given case—a question of doubt even for lawyers and courts. To require a business man offhand to determine whether a contract is executory or whether the property in the goods has already passed and impose a severe penalty upon him if he guesses wrong, is certainly an unfortunate state of the law which should not be tolerated if, as in the matter under consideration, it is not necessary."

The defendant contends that there is a well-recognized exception to this rule in cases where the defects in the articles are obvious, or where the buyer knows of them at the time of the acceptance of the goods. In support thereof he quotes the following passage from 30 Am. & Eng. Ency. of Plead. and Prac. p. 187: "Where the defects in the article are obvious or where the purchaser has had full opportunity for examination and knows of them, he must either when he receives the goods or within what, under the circumstances, is a reasonable time thereafter, notify the seller that the goods are not accepted as

fulfilling the warranty; otherwise the breach of the warranty, the contract being executory, will be deemed to have been waived." In support of this the author cites *Smith* v. *Servis*, 58 Hun, 601, 11 N. Y. Supp. 301, and *Locke* v. *Williamson*, 40 Wis. 377. The New York case does not seem to have been considered as a sale with warranty. At most it was only an implied warranty. In that state it is held, contrary to the general rule, that an implied warranty is waived if, with knowledge of the defect, the article is accepted. But the opposite is the rule there with regard to express warranties. The Wisconsin case supports the text, but it is clearly against the weight of authority. If one who buys goods upon an express warranty of quality, must refuse to receive them if he knows they are defective at the time, and waives his right of action on the warranty if he accepts them, the warranty would be useless, since he would have the same right if he had not taken the warranty, and his damages for non-delivery of the goods would be practically the same in one case as in the other, except in the one case where greater damages are allowed by the code. (Civ. Code, sec. 3314.)

For these reasons we are of the opinion that the court correctly instructed the jury and that the evidence sufficiently sustains the verdict of the jury.

It is claimed that the court erred in sustaining objections to certain questions asked of the witnesses Wall and Hotchkiss. It was the theory of the defendant that the rusting of the cans after they were packed in the boxes furnished by the defendant was not caused by the wetness or dampness of the boxes, but by drops of moisture which were left upon the cans by the American Can Company in manufacturing them. These witnesses testified that they had examined a number of cans made by the can company for the plaintiff and found upon them beads of moisture, indicating that they were damp from some defect in the making of the cans. They then testified that they saw other crates filled with cans which it is conceded were not a part of the cans manufactured for the plaintiff. With regard to these they were asked: "What was the condition of these cans as to showing moisture?" Objection was made that the evidence was irrelevant and immaterial, since the cans referred to were not of those manufactured for the plaintiff. This objection was sustained and the ruling was

assigned as error. We think the ruling was correct. There was no offer to show and it did not appear that the cans to which the question referred were manufactured in the same manner or by the same process as those supplied for the plaintiff. The evidence was clearly collateral and irrelevant to the issue.

The order is affirmed.

Angellotti, J., Sloss, J., Melvin, J., and Lorigan, J., concurred.

In denying a rehearing, the court in Bank rendered the following opinion on March 3, 1911:—

THE COURT.—In a petition for rehearing the defendant contends that the measure of damages stated by the court below in its instructions to the jury was incorrect and inapplicable. The rule laid down in the instruction complained of was that declared in section 3314 of the Civil Code with respect to the damages for breach of warranty of fitness of an article for a particular purpose, the rule including a fair compensation for the loss incurred by an effort in good faith to use it for such purpose. The defendant's criticism is that the warranty shown was an express warranty of quality, only,—that is, that the boxes should be dry, and that this by operation of law excludes an express or implied warranty of fitness. It is sufficient to say on this point that the facts alleged and proven show that in order to make the boxes fit for the use intended it was necessary that they should be dry, and that, therefore, the express warranty made was a warranty both of quality and of fitness for the purpose intended, in which case the rule stated in section 3314 would be applicable. Furthermore, the facts alleged and proven would suffice to create an implied warranty of fitness, and we do not think it is true that the making of an express warranty of quality will exclude an implied warranty of fitness, where the warranty so implied is not only not inconsistent with the express warranty, but entirely in harmony therewith. There was no conflict in the evidence regarding these warranties.

The petition for a rehearing is denied.