[Civ. No. 6656. First Appellate District, Division Two.—June 15, 1929.]

MAX J. BRANDENSTEIN et al., Respondents, v. D. C. JACKLING et al., Appellants.

440

Chandler & Quayle for Appellants.

H. U. Brandenstein, R. A. Carter and H. R. Kalisher for Respondents.

KOFORD, P. J. — Plaintiffs recovered judgment for $15,680 for breach of warranty of quality made in the sale of rice, together with interest from the commencement of this action. Defendants appeal, claiming chiefly that there was no warranty made in the sale.

The contract of sale and warranty upon which the judgment appealed from is based, was made between two San Francisco merchants for the sale and purchase of rice to be shipped from the Orient to Cuba and is in its essential parts as follows:

"San Francisco, March 9, 1920.
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Pacific Rice Mills hereby agrees to sell and M. J. Brandenstein and Company, San Francisco, California, agrees to buy the following goods at the prices and on the terms mentioned below:

"Quantity: About two thousand (2000) Long Tons of 2240 pounds each.

"Packed: Double bags of 224 pounds gross each.

"Quality: No. 1 Saigon Long Grain Rice, f. a. q. of the season.

"Price: $11.80 per 100 lbs. gross, in bond CIF Havana, Cienfuegos or Santiago, buyers option, to be declared on request of sellers.

"Shipment: March/April/May from Orient to Cuba.

"Terms: Draft at sixty days sight against confirmed bankers irrevocable letter of credit to be established im-

mediately by buyers in favor of sellers; interest for sellers' account.

" . . .

"This contract is made subject to terms of carriers B/L.

"The word 'about,' if used herein in designating quantity, shall mean that a variation of not more than five per cent (either way) of shipping weights or quantity is permitted.

"Claims for damages or difference in quality must be presented within ten days after arrival of each portion of goods at destination.

"The goods are for buyers' account and risk as soon as landed from the carrier and order tendered.

"Wharfage, if any, to be paid by buyer.

"C. I. F. and C & F sales differ from F. O. B. sales only in that sellers guarantee insurance and freight as the case may be; no additional responsibility being involved.

"Oriental shipping weights final.

"Oriental Surveyor's Certificate, certifying rice to be F. A. Q. of the season and free from worms, weevils, and other vermin at time of shipment to accompany documents and to be final.

" . . .

"The terms of this contract are herein stated in their entirety and it is understood that there is no other contract or verbal agreement."

The trade terms used in said contract are explained in the court's findings as follows:

"Under general usages and customs of the trade of selling and buying rice to be imported from the Orient in the contracts involved in this action the terms 'Quality No. 1 Saigon Long Grain Rice, F. A. Q. of the Season' and 'Oriental Surveyor's Certificate' had and were intended by the parties to said contracts to have the following meaning, viz.:

" 'Long Grain': rice of the long grain type as distinguished from the round grain type;

" 'Saigon': rice grown in Indo China and exported from the port of Saigon;

" 'No. 1 Saigon': rice grown in Indo China and exported from Saigon of which the broken grains do not exceed twenty per cent of the lots of rice involved. For the purpose of such determination the percentage of broken grains is by weight; all whole grains and all grains that are broken but remain

more than half grains are considered unbroken grains; only half grains or less than half grains are considered broken grains;

" 'F. A. Q.': fair, average quality;

" 'F. A. Q. of the season': fairly equal to the average crop of Saigon Long Grain Rice produced during the rice growing season involved;

" 'Oriental Surveyor's Certificate': the certificate of inspection of two disinterested inspectors at the point of shipment." The findings continue: "Such certificate of inspection for each lot of rice, together with bill of lading and proper insurance policies, is thereupon attached to the draft for the purchase price of rice shipped, drawn against letter of credit established with a California bank by the buyer in favor of the seller, and payable at such time after sight as may be agreed upon between the parties; and, in this case, agreed upon by the parties to the action by said contracts; that said draft, with said other documents, is then forwarded and presented to the California bank for payment; if the documents do not describe the rice to be such as called for by the contracts, payment may be but need not be refused by the buyer. If said documents do describe the rice to be such as called for by the contracts, and otherwise sufficient, said draft is thereupon paid in advance and irrespective of the fact of the actual arrival of the rice at its destination. And, further, said rice may be bought, sold and paid for several times on mere exchange of the documents before the arrival of the rice at the port of destination."

The rice was shipped. The shipper attached inspection certificates, bills of lading and proper insurance policies to a draft drawn upon the plaintiffs. The draft was honored and paid. When the rice thereafter arrived in Cuba the plaintiffs objected upon the ground that the rice was not No. 1 quality. This action is based upon that claim and judgment was given plaintiffs for breach of warranty of quality. Of a total of 20,779 bags shipped under this contract, 4,000 bags or about twenty per cent were found by the court to fall below grade No. 1. In holding that the certificate was not the final and ultimate test of the quality meant by the expression No. 1, and that it did not by itself make full and complete performance by the seller in respect to that quality,

the court took notice or decided that the contract clause calling for the certificate did not require the certificate to certify whether the rice was No. 1 but only to certify that it was F. A. Q. of the season and free from worms, weevils and other vermin at time of shipment.

The importance of this point in this case is illustrated by the fact that there was a second cause of action upon a contract dated March 22, 1920, similar to that declared upon in the first cause, but upon which second cause of action plaintiff was denied relief, although 250 bags of rice shipped under that contract were found to fall below No. 1 grade. That cause of action was in most respects the same as the first, but the court held there was no warranty, the inspection certificate being held final as to all qualities. That contract had a different clause calling for an inspection certificate. It read:

"Hongkong Surveyors or Saigon Merchants certificate final as to quality, condition and weight at time of shipment."

In the contract upon which the judgment appealed from is based, the inspection certificate was made final, but that certificate was not required to certify that the rice possessed those special qualifications meant by the expression No. 1. The finality of the inspection certificate therefore related to those qualities only to which the certificate was by the contract required to certify. This case is therefore distinguishable from those cited by appellant, such as *California Sugar Agency* v. *Penoyar*, 167 Cal. 274 [139 Pac. 671], and *Bullock* v. *Consumers Lumber Co.*, 3 Cal. Unrep. 609 [31 Pac. 367, 370], where the quality of goods sold was left to the determination of a third party. No doubt the parties could have expressly stipulated in the contract for a certificate of a third party that the rice was No. 1 quality, and could have stipulated that such certificate should be the final and ultimate test of that quality; but it seems plain that they clearly omitted doing so. Such a stipulation would make such certificate conclusive evidence that the warranty had been fulfilled in the absence of fraud.

There being no contract requirements for a certificate as to No. 1 quality, we need not consider the debated points whether the certificate did in fact so certify and whether, if it did not, such defect was waived by respondents in honor-

ing a draft with such defective certificate. This action is not on the draft.

Appellants' argument is that no warranty was intended. They claim that the contract called for a final certificate of all qualities agreed upon; that the contract was a "C. I. F." contract calling for performance by delivery of certain documents representing the shipped goods rather than the goods themselves; that the contract called not for quality but for a certificate of quality, including the qualities meant by the term No. 1; that evidence at the trial showed a general custom of having an inspection made by independent merchants at the point of shipment and of issuing certificates and other documents representing the shipped rice, which documents changed hands from time to time by sale from one merchant to another; that the custom was to rely upon the certificates and not to warrant; that even if the contract here contained a warranty of No. 1 quality, the certificate of inspection satisfied that warranty, it being claimed that the certificate would necessarily by indirection certify to the qualities embraced in the expression No. 1 while certifying to the other qualities of No. 1 rice.

The answer to each of these contentions is the same. Evidence is not admissible to change the terms of a written contract. If there is a warranty expressed in the contract, evidence of custom and usage is not admissible to show that no warranty was intended. (*Miller* v. *Germain Seed etc. Co.*, 193 Cal. 62 [32 A. L. R. 1215, 222 Pac. 817]; *Buckner* v. *A. Leon & Co.*, 204 Cal. 225 [267 Pac. 693]; *Ferguson* v. *Koch*, 204 Cal. 342 [58 A. L. R. 1176, 268 Pac. 342].) Nor is evidence of a custom admissible which is inconsistent with the contract. "Stipulations which are necessary to make a contract reasonable, or conformable to usage, are implied, in respect to matters concerning which the contract manifests no contrary intention." (Civ. Code, sec. 1655.) "All things that in law or usage are considered as incidental to a contract, or as necessary to carry it into effect, are implied therefrom, unless some of them are expressly mentioned therein, when all other things of the same class are deemed to be excluded." (Civ. Code, sec. 1656.) Evidence may be given of "usage, to explain the true character of an act, contract, or instrument, where such true character is not otherwise plain; but usage is never admis-

sible, except as an instrument of interpretation.'' (Code Civ. Proc., sec. 1870, subd. 12.)

Respondents answer the several contentions of appellants by asserting that the contract in this case contains an express rather than an implied warranty, and that, being an express warranty, none of the facts, circumstances, usages or customs referred to by appellants can operate to take away from the contract that which is expressed therein. With this we agree. The agreement to ship and deliver No. 1 rice amounts to an express warranty of quality where, as here, No. 1 rice has a definite and well-known meaning in the trade. (*Flint* v. *Lyon*, 4 Cal. 17; *Polhemus* v. *Heiman*, 45 Cal. 573; *Barrios* v. *Pacific States Trading Co.*, 41 Cal. App. 637 [183 Pac. 236]; *Firth* v. *Richter*, 49 Cal. App. 545 [196 Pac. 277]; *Newhall Co.* v. *Hogue-Kellogg Co.*, 56 Cal. App. 95 [204 Pac. 562]; 24 R. C. L. 171; 22 Cal Jur. 994.) *Miller* v. *Germain Seed etc. Co.*, *supra*, is not contrary. It was held that the warranty there considered partook both of the nature of an express and of an implied warranty. The seller did not expressly say that the seed sent was the kind ordered. Affirmation of quality or variety was implied from the mute act of the seller in sending seed in response to an order for a certain kind. Evidence of custom was there held admissible, not to change the terms of a written or express contract but in connection with that part of the contract which the court said was the implied part of the contract. The court said (p. 66): ''It is, of course, conceded that if there had been a written warranty or an expressed oral warranty of the character of the seed, the custom of the dealer in other cases not to give such a warranty, would have no bearing upon the terms of the express warranty.''

The rule that a sale of goods by a descriptive name well known in the trade amounts to an express warranty, simply holds one to deliver the goods which he has contracted to deliver. The appellants' express written agreement to deliver No. 1 Saigon long grain rice would not be performed by delivery of round grain or No. 2 rice or any other thing not described in the contract. As about twenty per cent of the bags delivered contained rice of less value than the rice agreed upon, the buyer was entitled to damages for breach of contract. Considering appellants' failure to deliver all No. 1 rice as a breach of contract in-

stead of a breach of warranty of quality, the judgment appealed from would be equally well supported. So treating it, there might be some difference in considering whether respondents had waived the breach by accepting the goods, since such a' waiver is perhaps more easily shown when there is no warranty. ▉ It has been frequently held that acceptance of goods does not waive a breach of warranty. (*North Alaska etc. Co.* v. *Hobbs, Wall & Co.,* 159 Cal. 380 [35 L. R. A. (N. S.) 501, 120 Pac. 27].) But, be there a warranty or not, the question of waiver is a question of fact. The following quotation from Williston on Sales, section 488, is quoted with approval in *North Alaska etc. Co.* v. *Hobbs, Wall & Co.,* 159 Cal. 380, 388 [35 L. R. A. (N. S.) 501, 113 Pac. 870] : ''The hypothesis is, therefore, that the goods which the seller tenders in his performance of the contract might have been refused by the buyer on account of the seller's failure to fulfill his obligation. The obligation of the seller may have been stated either in adjective form as part of the description of the goods, . . . or the broken promise may have been in the form of a collateral warranty, or it may have been a warranty implied by law. . . . It is doubtful if the intention of the parties varies with the form in which the promise is put, whether as part of the description of the goods, or as a strictly collateral warranty. No doubt it is possible, however, for the buyer not merely to accept title to the goods offered, but to accept the transfer of title as full satisfaction of all the seller's obligations under the contract. Whether the buyer thus agrees to waive deficiencies in performance is logically and should, it seems, be legally a question of fact in each case.'' ▉ In the instant case the acceptance of the rice by the respondents does not show a waiver of the breach. Immediately upon receipt of the shipment of rice, the respondents notified the appellants in writing that there was an excessive amount of broken grains and further stated ''when we are in receipt of full particulars we will advise you further.'' To which appellants immediately replied to the effect that they disclaimed any further duty or responsibility as to quality than the furnishing of the merchant's certificate of inspection and added ''however, would be glad to take the matter up with our suppliers should you put us in possession of the necessary facts.'' This correspondence in connection with the time and place of the dis-

covery of the breach and the quantity and nature of the defects in quality does not show a waiver of the breach.

■ Some points are made upon the admissibility of evidence. The broker's letter to appellants confirming the sale, written on the same date of but prior to the execution of the contract, was offered in evidence by appellants but was not admitted. It contained the following clause: "Remarks: Hongkong Surveyors' or Saigon Merchants' certificate final as to quality, condition and weights at time of shipment. Contract to follow." It was properly excluded under the rule of Civil Code, section 1625, because it was superseded by the written contract.

■ Defendants' exhibit No. 9 was a letter of credit issued to appellants by a San Francisco bank containing the statement that it was issued at the instance of respondents. In enumerating the necessary documents to accompany drafts against the amount of credit specified in the letter, it described the required certificate as one "as to quality, weight and condition." It was not rejected as at first stated by appellants, but received in evidence upon the offer of appellants. This evidence, if admissible, was not conclusive. It did not as a matter of law change the express language of the contract in respect of the matters to which it related.

■ Evidence offered by respondents as to the percentage of broken grains of rice was sufficient to support a finding that the rice both when shipped and when unloaded at Cuba was below the standard of No. 1 rice. The samples produced and testified to showed the condition of the rice after it arrived and had been stored in Cuba several months. Appellants cite authority to the effect that the presumption that a thing proven to exist continues to exist does not work backward, but respondents rely upon opinion testimony in the record to the effect that the broken grains were broken in the milling process, which would be before shipment. Questions about the dates of samples taken, the keeping of the samples and the honesty of the samples, all relate to the weight of the testimony. Respondents' testimony that the rice was below the standard of No. 1 quality, however, was uncontradicted by any counter-showing by appellants.

■ Respondents made the claim within ten days after arrival that the shipment contained an excessive amount of broken grains. Respondents did not, however, specify a

direct and detailed claim for damages within that time. Appellants immediately replied to respondents that they had no responsibility other than furnishing the surveyor's certificate. Respondents' claim did not fail to measure up to the meager requirements of the contract for claims, and the sweeping denial of responsibility by appellants excused a more detailed statement of damage by respondents in their claim.

The time and place used at the trial in admeasuring the damages was the time of the arrival of the shipment and at Cuba. Appellants now claim that the time and place for measuring the amount of damages should be the time and place of shipment from Saigon. This point was not made by appellants at the trial and is not available to them on this appeal. Their objection to evidence of value at Cuba was confined to the claim that the parties were precluded by the inspection certificate. Moreover, it was proper to measure the damages as of the time and place of arrival of the rice at Cuba under the authority of *W. R. Grace & Co.* v. *Levy,* 30 Cal. App. 231 [156 Pac. 626]. Appellants knew the rice was to be shipped to Cuba by the terms of the contract and the contract likewise apprised them that no inspection as to quality No. 1 would be made by respondents at point of shipment. (See, also, 22 Cal. Jur. 1022, and cases cited, and *Porter* v. *Gestri,* 77 Cal. App. 578 [247 Pac. 578].)

The court did not err in including interest in the judgment from date of commencement of action. The rule of Civil Code, section 3287, entitles the plaintiff to interest when entitled on a particular day to recover damages which are certain or capable of being made certain by calculation. Damages which are fixed by market value or by the difference between two market values have been held to be certain by calculation within the meaning of this rule. (*Olcovich* v. *Grand Trunk Ry. Co.*, 179 Cal. 332, 336 [176 Pac. 459]; 8 Cal. Jur., p. 791; 1 Sutherland on Damages, sec. 348, p. 1100.) Civil Code, section 3313, prescribes the measure of damage for breach of warranty of quality of personal property as the excess in value of the property if it had been of the quality warranted over its actual value at the time to which the warranty referred. There was testimony of the market value of No. 1 Saigon long grain rice at the

port of discharge in Cuba and testimony that Saigon long grain rice at that place which fell below No. 1 standard was of the value of $1.75 to $2 per hundredweight less than the No. 1 grade. The amount of damage awarded respondents was apparently figured at $1.75 per hundredweight of the portion of the rice which fell below grade No. 1. The amount recovered by respondents was a part of the amount already paid appellants by them when they honored the draft before arrival of the shipment.

The judgment appealed from is, therefore, affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 11, 1929, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 12, 1929.

All the Justices present concurred.