[Civ. No. 2849.   First Appellate District, Division One.—June 17, 1919.]

## O. BARRIOS, Respondent, v. PACIFIC STATES TRADING COMPANY et al., Appellants.

[1] SALES—WARRANTY—USE OF TERM UNNECESSARY.—The use of the word "warrant" is not necessary to the creation and existence of an express warranty of goods sold where the terms of the agreement of sale designate the particular quality of the article

to be delivered in phrases which are well known to the trade in respect to the particular article purchased and sold.

[2] ID.—ACCEPTANCE OF ORDER FOR "EXPORT-CURED" CODFISH.—The acceptance of a written order for a certain quantity of "export-cured" codfish amounts to a warranty that the goods when packed for shipment should measure up in point of quality to the full meaning of the term "export-cured."

[3] ID.—ACTION FOR BREACH OF WARRANTY—EVIDENCE—FINDING.— In an action for breach of warranty in connection with the purchase of "export-cured" codfish, testimony of an experienced exporter that every can to the number of eighty or a hundred selected at random from the general lot when opened at a foreign port contained a quantity of foul liquid, the codfish therein being entirely decomposed, and that the codfish thus found to be in that condition was not "export-dried codfish," if believed by the court, is sufficient to sustain a finding that the codfish were not as warranted.

[4] ID. — WRONGFUL ADMISSION OF CUMULATIVE EVIDENCE. — The wrongful admission of evidence which is merely cumulative of the uncontradicted testimony of a witness whose testimony is properly admissible does not constitute reversible error.

[5] ID.—DIRECTIONS TO CARRIER—MODIFICATION OF CONTRACT OF PURCHASE—LIABILITY FOR BREACH.—Where the contract of sale called for "export-cured" codfish, the seller could not, without the knowledge and concurrence or consent of the purchaser, modify such contract by stamping upon each package of codfish the words, "Perishable. Store away from boilers." If the carrier disobeyed the instructions evidently intended for its guidance, its breach of duty in that regard cannot be charged to the purchaser.

[6] ID.—INSPECTION OF CODFISH DURING PREPARATION—WAIVER OF WARRANTY.—The buyer of "export-cured" codfish is entitled to rely upon the assurances of the packer that the goods shipped will be of the quality warranted by the terms of the written agreement with it, and the mere fact that an agent of the buyer sees such goods in the process of preparation and expresses a doubt as to their being sufficiently dried cannot be held to either constitute a waiver of such warranty or to have required a further inspection of the goods after they have been sealed and packed and delivered on shipboard at the point of shipment for the place of their destination.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Jas. M. Troutt, Judge. Affirmed.

The facts are stated in the opinion of the court.

McWilliams & Hatfield, George J. Hatfield, Edwin H. Williams and Maurice L. Asher for Appellants.

Wise & O.'Connor, Richard S. Goldman and John C. Altman for Respondent.

RICHARDS, J.—This is an appeal from a judgment in the plaintiff's favor in an action brought by him as the assignee of Lewis-Simas-Jones Co., a copartnership, to recover from certain stockholders of the Pacific Trading Company, a corporation, their proportionate share of the liability of said last-named corporation arising out of its alleged breach of warranty. The transaction out of which the cause of action arose was one in which the Lewis-Simas-Jones Company gave its written order to the Pacific States Trading Company for a certain quantity of "Export-cured boneless codfish" and for a certain further quantity of "Export-cured whole codfish," to be packed by the latter corporation in or near San Francisco, for shipment by the copartnership, the plaintiff's assignor, to Valparaiso, Chile, which order being accepted, the fish, in due course, were packed and delivered in hermetically sealed tins, cased for foreign shipment, to the steamship company at San Francisco consigned to said foreign port. Arriving there in December, 1915, they were on examination found to be spoiled and unfit for human consumption, and were destroyed by the public authorities. Thereafter the plaintiff, as assignee, commenced this action and recovered judgment against the several appellants herein upon their proportionate liability as stockholders of the said defendant corporation.

The appellants urge several points against the judgment. The first of these is that there was no warranty as to the quality of the fish sold embraced in the written order and its acceptance out of which the cause of action arose. [1] It is true that the word "warrant" is not to be found in the language of the written order or of its acceptance, but we do not think that this is necessary to the creation or existence of an express warranty of goods sold where the terms of the agreement designate the particular quality of the article to be delivered in phrases which are well known to the trade in respect to the particular article purchased

and sold. The order in the instant case was for "export-cured codfish." The evidence showed that these terms had a well-defined meaning as applicable to codfish, which were so prepared and packed through the extraction of all moisture as to be able to withstand the varying heat and other perils incident to a long sea voyage across the equator to a distant country. [2] We are of the opinion that the acceptance of the order expressly requiring the pack to be "export-cured" codfish amounted to a warranty that the goods when packed for shipment should measure up in point of quality to the full meaning of the term "export-cured." (*Coats* v. *Hord*, 29 Cal. App. 115, [154 Pac. 491].)

[3] The next contention of the appellants is that conceding that the terms of the written order and of its acceptance amounted to a warranty that the goods packed and delivered thereunder would be "export-cured codfish," there is no evidence of the breach of such warranty. But in this respect, also, we cannot concur in the appellant's contention. The evidence showed that there were two qualities of cured codfish known to this particular trade. One was "domestic cured codfish," intended for use in domestic trade. In packing this quality of codfish it was not required that all moisture should be dried out of the fish before being packed in tins; but as to the other quality defined as export-cured codfish it was essential that all moisture should be extracted by the drying process in order that the sealed product might be able to withstand the extremes of climate incident to its shipment to foreign and, as in this instance, tropical lands. Upon the trial of the cause the plaintiff Barrios, who was one of the members of the copartnership and an experienced exporter, testified to having been present when a considerable number of the cases containing the hermetically sealed cans of the shipment in question were opened at Valparaiso, and when it was found that every can to the number of eighty or a hundred selected at random from the general lot contained a quantity of foul liquid, the codfish therein being entirely decomposed. The witness further testified that the codfish thus found to be in that condition was not "export-dried codfish." We think this testimony, if believed by the court, would suffice to sustain its finding in that regard.

In this same connection the appellants insist that the court committed reversible error in the admission in evidence of certain depositions given by several persons who also witnessed the opening of the tins containing the codfish in question at Valparaiso, and whose testimony was to the same effect as that given by the witness Barrios. It is practically conceded by the respondent that these depositions were not entitled to admission in evidence, and that the action of the trial court in their admission was an error. [4] It does not follow, however, that it was a reversible error, since the condition in which the codfish was found to be when opened at Valparaiso was not a seriously controverted fact in the case, the testimony of the witness Barrios being uncontradicted by the defendants, who offered no evidence whatever as to the condition of the goods upon their arrival at Valparaiso. It is a practically conceded fact in the case that the goods were spoiled in transit, and this being so, the evidence embraced in the depositions properly objected to by the defendants was merely cumulative of the uncontradicted evidence of the witness Barrios, and hence the defendants were in no wise prejudiced by its admission. It is, however, contended in this connection by the appellants that two of the witnesses whose depositions were thus erroneously admitted gave testimony in the nature of opinion evidence that the fish had not been export-cured, and that in this respect their wrongly admitted testimony was prejudicially injurious. Counsel for the appellants, however, are at pains to point out to the court that these particular witnesses were in no sense experts in the matter of what did or did not constitute "export-cured codfish," and that their evidence in that respect was therefore of the weakest and most unsatisfactory character. If this be true, as the record seems to show it to be, an added reason is furnished why evidence of such flimsy and ineffectual quality should not be regarded as sufficiently prejudicial in its influence upon the mind of the trial court to justify a reversal of the case.

[5] The next contention of the appellants is that conceding the warranty upon which this action is predicated to have been embraced in the terms of the writings, it was a warranty subject to an express condition which was contained in the words stamped upon each package of codfish,

41 Cal. App.—41

"Perishable. Store away from boilers," and that no proof had been presented on the part of plaintiff that this condition had not been broken, or that the spoiled state in which the codfish upon its arrival at Valparaiso was found to be was not the result of its breach. The difficulty with this contention is that the words above quoted constituted no part of the contract between the parties; they were placed upon the outside of the packages which the packer, had prepared without any knowledge on the part of the purchaser as to their presence there, and hence without any concurrence in or consent to their existence or effect as a limitation upon the warranty of the goods within. If the carrier disobeyed the instructions evidently intended for its guidance, its breach of duty in that regard cannot be charged to plaintiff's assignor, who was entirely ignorant of such a direction, and upon whom it was not incumbent, in the first instance, to show whether or not it had been disobeyed.

The final contention of the appellants is that the plaintiff should have reduced his damages by a sale of the codfish in question at San Francisco prior to their shipment to their ultimate destination. This contention is based upon the claim of the defendants that the fact that the goods were not "export-cured" was known to one of the buyers' authorized agents before the goods were fully packed. We do not think that the evidence sustains this contention, for while it is true that one of the buyer's agents visited the drying and packing grounds of the packer while the goods were being canned, and there expressed his doubts as to whether they were sufficiently dry for export shipment, the evidence also shows that he was assured by the more experienced representative of the packer that they were sufficiently dried to withstand a trip to South America. [6] The buyer was entitled to rely upon the assurances of the packer that the goods shipped would be of the quality warranted by the terms of their written agreement with it, and the mere fact that an agent of the purchaser saw such goods in process of preparation and expressed a doubt as to their being sufficiently dried cannot be held to either constitute a waiver of such warranty or to have required a further inspection of the goods after they had been sealed and packed and delivered on shipboard at San

Francisco for the place of their destination. (*Grace* v. *Levy*, 30 Cal. App. 231, [156 Pac. 626]; *North Alaska Salmon Co.* v. *Hobbs etc. Co.*, 159 Cal. 381, [35 L. R. A. (N. S.) 501, 113 Pac. 870, 120 Pac. 27].) There is no merit, therefore, in the appellants' contention that the goods should have been examined at San Francisco, and if found defective in quality, sold there in order to reduce the defendants' bill for damages. (*Krasilnikoff* v. *Dundon*, 8 Cal. App. 406, [97 Pac. 172].)

The judgment is affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 14, 1919.

All the Justices concurred, except Wilbur, J., who was absent.