[Civ. No. 4335. First Appellate District, Division Two.—July 23, 1923.]

## PACIFIC FEED CO., Appellant, v. MRS. JOSEPH KENNEL, Respondent.

[1] SALES — BEET PULP — INFERIOR GRADE—EVIDENCE—FINDINGS.—In this action to recover the purchase price of certain beet pulp sold and delivered by plaintiff to defendant, the evidence amply supported the findings of the trial court to the effect that plaintiff agreed to sell and deliver to defendant a specified number of sacks of beet pulp of good quality and in good condition, at an agreed price, that the beet pulp delivered by plaintiff was not of the kind or quality ordered by defendant or of the quality or kind plaintiff agreed to sell and deliver, but that it was of inferior and different quality, was damaged, and was not the product of the mill specified by the parties, and that it was off-grade, in bad condition, injurious, unsafe and unfit to be fed to defendant's cows or to be used for feeding purposes.

[2] ID. — REPRESENTATIONS OF AGENT — WARRANTY — KNOWLEDGE. — Plaintiff's agent having represented the beet pulp as number one, plaintiff was bound to make good that representation, and it is immaterial that such agent did not know whether his statement was true or false.

[3] ID.—CHEMICAL ANALYSIS OF PULP—EVIDENCE.—In such action, the trial court did not commit error in refusing plaintiff permission to cross-examine one of the witnesses on the contents of a certain paper purporting to be a chemical analysis of the pulp, where such witness was not the author of the paper, had not produced it, and bore no relation to it.

[4] ID. — CHEMICAL CONTENTS OF PULP — ADMISSIBILITY OF TAGS. — There having been attached to each bag, as required by state statute, a tag showing that the pulp contained in the bag was composed of a certain quantity of each of several chemicals, but no issue having involved the question whether the pulp contained those elements, the trial court properly sustained defendant's objection to the offer of such tags in evidence.

[5] ID.—NEW EVIDENCE BY WITNESS—LACK OF DILIGENCE—REOPENING OF CASE.—The representative of a prior owner of the pulp having been in court as a witness and been examined to some extent by both plaintiff and defendant, the trial court did not err in denying plaintiff's motion to reopen the case, after it had been tried and submitted, for the purpose of introducing some further information which plaintiff had learned such witness had and which plaintiff desired to introduce in evidence, there having been no showing of due diligence.

APPEAL from a judgment of the Superior Court of San Mateo County. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

I. M. Peckham for Appellant.

John D. Willard for Respondent.

STURTEVANT, J.—The plaintiff sued the defendant to recover a judgment for the purchase price of beet pulp sold and delivered. Judgment was awarded the defendant and the plaintiff has appealed.

The plaintiff's complaint alleged that the plaintiff "sold and delivered to defendant goods, wares, and merchandise," etc. In her answer the defendant pleaded as follows:

"Admits that on the 15th day of December, 1920, defendant ordered from plaintiff three hundred (300) sacks of beet pulp at the agreed price of forty and 50/100 ($40.50) dollars per ton, but denies that the beet pulp delivered by plaintiff to the defendant was the same as ordered by defendant; that the beet pulp delivered to her was damaged and of an inferior quality and unfit for use.

"Defendant further avers that on the said 15th day of December, 1920, said plaintiff agreed to furnish and supply defendant from the Salinas Mills beet pulp of good quality, in good condition and fit for use. That on the contrary, plaintiff delivered to defendant, not from the Salinas Mills, but from a firm in South San Francisco, who had sold the same to plaintiff as damaged pulp, an inferior quality, and unfit and unsafe to be fed to cows; that some of said pulp was fed by defendant to her cows and seventeen (17) of them became sick and four (4) of which number died.

"Denies that the defendant purchased or agreed to purchase from the plaintiff the beet pulp described and set forth in plaintiff's complaint herein, and delivered by plaintiff to defendant."

The defendant also pleaded a counterclaim, in which she alleged the same defective and bad condition of the beet pulp, her injuries by reason of the use thereof, and asked damages in the sum of $2,000. The trial court made findings which included, among others, paragraph 2, which is as follows:

"2. That on or about the 15th day of December, 1920, at Visitation, in the County of San Mateo, State of California, plaintiff agreed to sell and deliver to the defendant at her place of business at Visitation, in the County of San Mateo, State of California, three hundred (300) sacks of beet pulp from the Salinas Mills of good quality and in good condition, at the agreed price of forty and 50/100 ($40.50) dollars per ton; that thereafter, and on or about said last-mentioned date, said plaintiff delivered to said defendant at her place of business three hundred (300) sacks of beet pulp, weighing 37,500 pounds as alleged in said plaintiff's complaint. That the beet pulp so delivered by plaintiff to defendant was not, and is not, the kind or quality ordered by defendant or of the quality or kind which plaintiff agreed to sell and

deliver to defendant; that it was, and is, of an inferior and different quality, was damaged, and was not from, nor the product of, the Salinas Mills; that the same was off-grade, in bad condition, injurious, unsafe and unfit to be fed to defendant's cows or to be used for feeding purposes.''

[1] In its brief the appellant attacks said finding as not being supported by the evidence. Points 1, 2, 3, 4, 5, and 7 attack the findings one phrase or clause at a time. We think that no one of the points is well founded. Mrs. Kennel testified that she made the purchase by talking over the telephone to Mr. Code, an agent of the plaintiff. She said that she generally used the best beet pulp she could buy for milk cows; that she generally used beet pulp from the Larrowe beet pulp factory, which has a place at Salinas and one at Los Angeles. Code told her that the beet pulp in question was from the Salinas factory and was number one quality. At another place in her testimony she testified that when she bought this beet pulp she bought it for first-class pulp; that Code told her that over the phone. In contradiction of Mrs. Kennel, the plaintiff called Mr. Code to the stand. On his direct examination he testified: ''I rang her up on the telephone and said I had a car of beet pulp that I could deliver down there—I think it was $41.50 or $40.50, I forget just what it was—in molasses. She said, 'It is all right, send it along.' I said, 'It came from Salinas'; I know now that it did not. Q. Was there anything said about the quality or grade of the beet pulp? A. Well, there is no quality on that. It is either plain or it is in molasses. . . . Mr. Riley stated it was the salvage pulp from the fire in Salinas. Q. That is the only conversation you had with Mr. Riley what you have related here? A. You see, you specify beet pulp as beet pulp. It is either plain or in molasses. You cannot state as to the quality. There is no quality to it. It is either one thing or the other. Q. But it can be good or bad, can't it? A. Yes, sir; sure. Q. And you know if it went through the fire the chemicals would affect it? A. Not according to the analysis. Q. Do you know whether or not this was beet pulp that was rescued from the fire? A. That I did not know.''

In the first place it will be noted that Mr. Code does not directly contradict Mrs. Kennel. Instead of stating the words she used and the words he used he lapses into a gen-

eralization regarding trade descriptions of beet pulp. Mrs. Kennel testified that Code had represented the beet pulp as "number one" and as "first class." Those expressions are synonymous with, and include, "good quality" and "good condition." (Roget's Thesaurus, par. 648.) Those same expressions negative "inferior quality," "damaged," "off-grade," "bad condition," "injurious," "unsafe," and "unfit for feeding purposes." (Roget's Thesaurus, par. 649.)

The defendant fed beet pulp to her cows, both before and after feeding the carload which is the subject matter of this suit, and, in so doing, she had no trouble about the cows getting sick. Mr. Allen, a witness called by the plaintiff, on cross-examination stated: "I have been in the stock business since I was a little child and I have fed all kinds of feed and I have never found beet pulp injurious to any animal if fed in moderation." Almost immediately after the carload was received from the plaintiff the servants of the defendant commenced to feed the same to the defendant's cows, and almost immediately thereafter the cows commenced to sicken. Seventeen in all became sick, their udders commenced to swell, and during the period of the sickness many of the cows dried up and had to be replaced. Four of the cows, of the reasonable value of $125, did not recover from the sickness, but died. The defendant continued to feed the beet pulp purchased from the plaintiff for a period of eight or ten days, then that beet pulp was not fed any more; on the other hand, the defendant purchased from another party a different lot of beet pulp and proceeded to feed to the cows the same classes of feeds in the same quantity, at the same time and in the same manner ordinarily followed by her. Immediately the sick cows commenced to recover, and no other cows sickened or died, and the defendant had no further trouble.

In the meantime the defendant notified the plaintiff of the troubles she was encountering and advised the plaintiff that the rest of the beet pulp was at her place, subject to the order of the plaintiff. At the time of the trial the defendant testified that the remaining portion of the carload was still in her shed and was still subject to the order of the plaintiff. Under these circumstances we think it is immaterial whether the carload of pulp came from the Salinas mills or did not come from those mills, and that the finding

on that subject is immaterial. Furthermore, that the findings "that the pulp delivered is of inferior quality and damaged," "that the pulp delivered was in bad condition, injurious, unsafe and unfit to be used for feed for cows," are sustained by the evidence which we have delineated. It may be that the finding "that plaintiff well knew the pulp delivered was damaged and unfit to be fed and used by cows or cattle" was not supported by the evidence. [2] But, as we have recited above, there was testimony that the plaintiff's agent represented the beet pulp as number one. The plaintiff was bound to make good the representation. It is immaterial that the warrantor did not know whether his statement was true or false. (35 Cyc. 378.)

The finding "that the injury and death of defendant's cattle was from eating and feeding on the pulp" is supported by the evidence which we have recited above.

[3] During the trial the plaintiff produced a paper purporting to be a chemical analysis of the pulp. The individual who signed the paper did not appear as a witness. The plaintiff complains because the trial court did not permit the plaintiff to cross-examine Mr. Riley on the contents of that paper. He was not the author of it, had not produced it, and bore no relation to it. The ruling was clearly correct.

[4] Pursuant to a state statute each bag of pulp had attached to it a tag showing that the pulp contained in the bag was composed of a certain quantity of each of several chemical elements. The plaintiff sought to introduce the tags in evidence. An objection was sustained. The ruling was correct—the evidence was clearly immaterial. No issue in the case involved the question whether the pulp contained those elements, and the tags did not even purport to show that the pulp did not contain certain other elements which would be deleterious to animal life.

The plaintiff presented the whole case as though it was wholly uninformed regarding any fact which would tend to put the plaintiff on notice that the pulp might not be fit to feed to dairy cows. Mr. Riley, acting for a former owner of the pulp, had sold it to Allen & Pyle, from whom the plaintiff purchased it. The defendant called him as a witness and asked him if he had informed Allen & Pyle that the pulp was off-grade. The plaintiff objected, the objection

was overruled. The ruling in itself was not erroneous. However, it may be that the testimony was not connected and that a motion to strike out should have been granted, but no such motion was made.

[5] As we have shown above, Mr. Riley was in court as a witness and was examined to some extent by the plaintiff and by the defendant. After the case had been tried and submitted the plaintiff learned that Mr. Riley had some information which the plaintiff desired to introduce in evidence. The plaintiff thereafter made a motion to reopen the case for the purpose of calling Mr. Riley as a witness. The motion was denied. The court did not err in denying the motion. The plaintiff had made no showing of due diligence.

We find no error in the record. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.