[Civ. No. 3072. Third Appellate District.—April 26, 1926.]

D. H. PORTER et al., Respondents, v. A. GESTRI, Appellant.

[1] SALES—CONTRACT FOR SALE OF GRAPES — WARRANTY — CONSTRUC-TION.—In this action for damages for breach of warranty in con-nection with the sale of grapes, a clause in the contract that "the seller covenants and warrants that he is the owner of a certain lot of 2,400 twenty-five pound boxes of black dried grapes" con-stitutes an express warranty that the grapes were of the black varieties.

[2] ID. — BREACH OF WARRANTY — INSPECTION PRIOR TO DELIVERY — PLEADING—EVIDENCE.—In such action, if it be conceded that the complaint was defective in failing to state facts which prevented the discovery of the breach of warranty at the time of delivery, defendant was not prejudiced where the answer alleged that plain-tiffs did not in fact inspect the grapes prior to the execution of the contract, and the undisputed testimony showed that no ef-fective inspection was made and that by reason thereof the war-ranty was inserted in the contract.

[3] ID.—OBLIGATION TO EXAMINE GOODS—RELIANCE UPON WARRANTY.—Where there is an express warranty the buyer is under no obli-gation to inspect or examine the goods purchased, but may rely on the warranty; and even if the buyer does make an examina-tion of the goods, this does not necessarily do away with the effect of the warranty.

[4] ID.—DISCOVERY OF BREACH OF WARRANTY—INSPECTION—MEASURE OF DAMAGES.—Where the buyer of grapes, while loading them on a steamer to be shipped to New York, discovered facts which created a doubt as to whether the grapes were black grapes as warranted by the seller, but was assured by the seller that, with a few exceptions, they were black grapes, the buyer was justified in proceeding with the shipment without further inspection and the damages awarded were properly based on New York prices.

[5] ID.—MARKET VALUE OF GRAPES—EVIDENCE—FINDINGS.—In this ac-tion for damages for breach of warranty in connection with the sale in 1923 of grapes produced in 1920, the evidence as to the relative value in New York and in Fresno of grapes grown dur-

1. See 22 Cal. Jur. 994.
3. See 22 Cal. Jur. 963.

ing 1920 and 1922 was sufficient to justify the finding of the
trial court as to the market value of the grapes in New York
had all been black grapes as represented.

(1) 35 Cyc., p. 384, n. 13, p. 464, n. 91.   (2) 4 C. J., p. 927, n. 42.
(3) 35 Cyc., p. 378, n. 78, 80.   (4) 35 Cyc., p. 467, n. 6.   (5) 35
Cyc., p. 465, n. 94.

APPEAL from a judgment of the Superior Court of
Fresno County. S. L. Strother, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank L. Simons for Appellant.

Williams & Fenstermacher and Chester O. Hansen for
Respondents.

FINCH, P. J.—On the seventh day of June, 1923, the
parties entered into a written contract of sale by defendant
to the plaintiffs of a certain lot of grapes. The parts of
the contract material to the questions raised by the appeal
are as follows:

"Whereas, the seller covenants and warrants that he is
the owner of a certain lot of 2,400 twenty-five pound boxes
of dried black grapes, principally Zinfandel and Mission
variety; . . . the said seller . . . does hereby sell said dried
black grapes, and all of them to the buyer, and the buyer
. . . does hereby buy the same from the seller for the
price of 11¼ cents per pound net f. o. b. cars . . . Fresno,
California, loading to commence not later than the 8th day
of June, 1923, or as soon thereafter as the transportation
company can furnish cars suitable for loading. The buyer
agrees to pay said seller the sum of . . . $6,750 as follows,
to-wit: Net cash and acceptance, Fresno."

Admittedly, on the eighth day of June, 1923, 3,561 twenty-
five pound boxes of dried grapes were, by agreement of the
parties, "delivered by defendant to plaintiffs under and
by virtue of the terms of the written contract," for which
the plaintiffs paid the defendant the agreed price of
eleven and one-fourth cents per pound. The complaint
alleges that the plaintiffs, in reliance upon the warranty
contained in the contract, received the grapes and shipped

them to New York City, believing that the grapes were of the kind mentioned in the warranty; that upon their arrival in New York the plaintiffs ascertained that the lot of grapes purchased "contained dried white grapes, as well as dried black grapes"; that the "defendant well knew that plaintiffs purchased said dried grapes for shipment to eastern markets"; that if the grapes had been as warranted they would have been of the value of $16,000 in New York, but that, by reason of the white grapes contained therein, they were of the value of only $6,000. The answer denies the foregoing allegations and alleges that the plaintiffs inspected the grapes before the execution of the contract and inspected and accepted them upon their delivery at Fresno. The court found the facts in accordance with the allegations of the complaint except as to the value of the grapes. In that respect it found that had the grapes been as warranted they would have been of the value of $14,021.43 in New York, but that, by reason of the mixture of white grapes with the black, they were of the value of but $7,789.68 in that city. Judgment was entered in favor of the plaintiffs for the difference. The defendant has appealed from the judgment.

Plaintiff S. A. Porter, who made the purchase for the plaintiffs, testified that the plaintiffs are wholesale jobbers, located in San Francisco; that defendant called at plaintiffs' place of business and stated that he "had about a car" of black grapes at Fresno and asked witness to go to Fresno and "look the lot over and he could probably sell them" to plaintiffs; that witness went to Fresno a few days later "for the purpose of examining the black grapes"; that he and defendant "looked at part of the pile, examining fifteen or twenty boxes, and they seemed to be apparently all black grapes"; that the witness later examined seven or eight more boxes; that "The pile was stacked so we couldn't break into it all and I took Mr. Gestri's warranties that they would be black grapes"; that he and defendant then went to a lawyer's office to have a contract drafted and executed; that in the lawyer's office, "I told Mr. Gestri that as long as they were all black grapes, that I was satisfied. Mr. Gestri said they were all black grapes. I said, 'As long as you will warrant that, we will take them'"; that the "contract was then drawn up. I

said I had to rely on him that they were to be all black
grapes, that I was in a hurry to get them on the boat and
I didn't have time to look them all over. . . . I told Mr.
Gestri that they had to make the steamer of the American-
Hawaiian line"; that he told defendant at that time that
plaintiffs expected to ship the grapes to New York and
had cargo space reserved for that purpose; that after the
grapes arrived in San Francisco, and three-fourths or more
of them had been loaded in the steamer's hold, "I noticed
the spillage on the dock, and that it was a little bit off
at the time. . . . We spoke to Mr. Gestri about it and he
said they were all right, so I thought it could be settled
with very little adjustment"; that at that time the boxes
were strapped, "two boxes to a bundle, wire strap on each
end so it was almost impossible to break the wires on those
cases, and there was a few cases yet unstrapped, and I
looked at five to seven cases. . . . I told Mr. Gestri we
thought we might have trouble with the raisins, . . . that
they were not all black grapes, and Mr. Gestri said they
were all right. He said: 'They will go through, they are
all black grapes, you won't have any trouble.' . . . And
then I relied on it more than ever, because he said there
might be a few cases like that, but they were all black
grapes. . . . I opened a few cases that were still unstrapped
and there I noticed a little difference from what I had
purchased. . . . I relied solely on Mr. Gestri's warranties,
more than I did on the inspection." The witness further
testified that the New York buyer rejected the whole lot of
grapes because they were not black grapes; that an inspec-
tion in New York disclosed that only twenty per cent of
them were black grapes; that plaintiffs sold the grapes,
after such rejection, for eight and three-fourth cents a
pound; that that was the "very best" price that could be
obtained for them; that the market price of black grapes
in New York at that time was from sixteen to seventeen and
one-fourth cents a pound; and that before shipment to
New York the plaintiffs had contracted to sell the grapes
at sixteen cents a pound for a part thereof and sixteen and
one-half cents for the remainder. Most of the grapes pur-
chased were of the crop of 1920. The contract is silent
as to the year grown. The evidence shows that in 1923
black grapes of the 1922 crop were of the market value of

from fifteen to sixteen cents a pound f. o. b. at Fresno; those of 1921 fourteen and one-half to fifteen and one-half cents, and those of 1920 fourteen to fifteen cents. Witnesses for the defendant testified that about half of the grapes were of white varieties. The defendant testified that the boxes were labeled "dried black grapes"; that at the time of the execution of the contract he did not know and that Porter did not tell him where the grapes were to be shipped, except that they were to be sent to San Francisco. In other respects Porter's testimony stands uncontradicted.

Appellant contends that "the general demurrer should have been sustained because there is no allegation in the complaint . . . that the defendant did not deliver to the plaintiff the goods specified in said contract." The theory of the complaint, however, is not that the plaintiffs did not receive the particular lot of grapes purchased, but that the grapes contained in such lot were not of the kind warranted. [1] It is clear that the clause of the contract first quoted herein constitues an express warranty that the grapes mentioned therein were of black varieties. (*Burge* v. *Albany Nurseries, Inc.*, 176 Cal. 313, 319 [168 Pac. 343]; *Rauth* v. *Southwest Warehouse Co.*, 158 Cal. 54, 60 [109 Pac. 839]; *Newhall Co.* v. *Hogue-Kellogg Co.*, 56 Cal. App. 90, 95 [204 Pac. 562]; *Firth* v. *Richter*, 49 Cal. App. 545, 548 [196 Pac. 277]; *Barrios* v. *Pacific States Trading Co.*, 41 Cal. App. 637, 639 [183 Pac. 236].) The uncontradicted evidence shows that the parties intended it to be such.

[2] It is next urged that "there should have been a statement of specific facts which prevented the discovery of the breach at the time of the delivery." If it be conceded that the complaint is defective in the particular mentioned, the answer alleged that the plaintiffs did in fact inspect the grapes prior to the execution of the contract and at the time of delivery, and the undisputed testimony, admitted without objection, shows that no effective inspection was made and that by reason thereof the warranty was inserted in the contract. Under such circumstances the alleged defect in the complaint did not prejudice the rights of the defendant. [3] "Where there is an express warranty the buyer is under no obligation to inspect or examine the goods purchased, but may rely on the warranty. The

main purpose of a warranty is often to excuse examination and render examination unnecessary.'' (35 Cyc. 378; *Morris* v. *Fiat Motor Sales Co.*, 32 Cal. App. 315, 317 [162 Pac. 663].) ''Even if the buyer does make an examination of the goods, this does not necessarily do away with the effect of the warranty.'' (35 Cyc. 378; *W. R. Grace & Co.* v. *Levy*, 30 Cal. App. 231, 236 [156 Pac. 626].) **[4]** The defendant knew that the grapes were to be shipped to New York. On the arrival thereof in San Francisco, and after the greater part of them had been loaded on the steamer, plaintiffs discovered facts which created a doubt as to whether the grapes were of the kind mentioned in the warranty. The defendant thereupon assured plaintiffs that, with a few exceptions, the boxes contained only black grapes. Under the circumstances, and in view of the express warranty contained in the contract, the plaintiffs were justified, under the authorities cited, in proceeding with the shipment without further inspection. It follows that the damages awarded plaintiffs were properly based upon New York prices. (*W. R. Grace & Co.* v. *Levy*, 30 Cal. App. 231, 234 [156 Pac. 626]; *Krasilnikoff* v. *Dundon*, 8 Cal. App. 406, 409 [97 Pac. 172]. See, also, *Burge* v. *Albany Nurseries, Inc.*, 176 Cal. 313, 318 [168 Pac. 343]; *Germain Fruit Co.* v. *Armsby Co.*, 153 Cal. 585, 590 [96 Pac. 319]; *Shearer* v. *Park Nursery Co.*, 103 Cal. 415, 419 [42 Am. St. Rep. 125, 37 Pac. 412].)

**[5]** It is contended that there is no evidence to show the market value of black grapes produced in 1920. The plaintiff testified that the market price of black grapes in New York was from sixteen to seventeen and one-fourth cents a pound. Another witness testified that black grapes have a higher market value than white grapes; that ''they want a grape to make claret wine . . . as a rule in the eastern cities''; that in 1923, about the time of the sale herein involved, black grapes grown in 1922 were of the market value of fifteen to sixteen cents, f. o. b. Fresno, and that as to those grown in 1920 ''there would not be a difference in value of over a cent a pound on them.'' There is no other evidence bearing upon the question of value. In the absence of any evidence to the contrary, it may be inferred that there was the same difference in value in New York as in Fresno between grapes grown in 1920 and those

grown in 1922. The court found that if the grapes had all been black grapes as warranted they would have had a market value in New York of fifteen and three-fourths cents a pound. The evidence fully supports this finding.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.