[Civ. No. 20288.   Second Dist., Div. Three.   Jan. 14, 1955.]

JOHN V. LANE, Appellant, v. C. A. SWANSON & SONS (a Corporation) et al., Respondents.

Collins & McKenna, James E. Collins and John F. McKenna for Appellant.

Flint & MacKay and Roscoe C. Andrews for Respondents.

SHINN, P. J.—This action is for alleged breach of warranty arising out of the sale of canned chicken. The complaint alleged that plaintiff bought a can of "boned chicken" which was packaged by defendant C. A. Swanson and Sons, a corporation, and sold to plaintiff by defendant Foods Company, a corporation; that "Said product was warranted by defendants, and each of them, to be free from chicken bones or other foreign substances and to be fit for human consumption." It was alleged there was a bone hidden in the contents of the can, that it became lodged in plaintiff's throat, causing severe personal injuries and expense for medical and surgical treatment, for which damages were sought. It was further alleged that plaintiff had given notice of the alleged breach of warranty to each of the defendants. The answers of the defendants denied they warranted the contents of the can to be free from chicken bones but admitted they warranted them to be fit for human consumption. They also pleaded the defense of contributory negligence. Judgment was for the defendants and plaintiff appeals.

The court found there was no evidence of an express warranty by either defendant that the contents of the can were free from chicken bones or other foreign substances. It was found there was a warranty that the contents were fit for human consumption but no breach of that warranty. Plaintiff does not contend there was a breach of implied warranty but insists that the evidence conclusively proved that there was an express warranty that the contents of the can were free from chicken bones. This is the sole question on the appeal.

The can purchased by plaintiff contained six ounces of chicken, salted. Upon the label were the words "Swanson," then in still larger letters "Boned Chicken" and in small letters "Ever Fresh" and beneath that in still smaller letters the word "Brand." The words "Boned Chicken" are in bold type, the word "Brand" in type so small as to be unnoticeable except on close inspection. In addition there was the following evidence: The Los Angeles Times of June 18, 1953, carried a full-page illustrated advertisement by defendant Swanson of its "Boned Chicken," "Boned Turkey," "Boneless Chicken Fricassee," "Chicken Fricassee," and other products. The ad pictures a can of "Swanson Boned Chicken," and beside the can this description of what is in the can: "Swanson Boned Chicken All luscious white and dark meat. *No bones.* No waste. Swanson chicken—finest in the land. Chosen by poultry experts. Specially bred and fed. Swanson-cooked to juicy perfection. Wonderful for salads and casseroles. Quick! Thrifty, too!" (Italics added.) A can of "Swanson Boned Turkey" is pictured in the ad with this description: "Swanson Boned Turkey It's all meat, ready to eat. Solid, juicy turkey — carefully boned — Swanson-cooked to juicy perfection. Extra-delicious. A salad treat!" A can of "Boneless Chicken Fricassee" is displayed in the ad with this description: "Swanson boneless Chicken Fricassee Young and tender pieces of chicken in real butter gravy. A thrifty main-dish meal. *No bones.* No waste. No work. Just heat and serve!" (Italics added.) There is no statement in the ad that any of the other products have been boned, or that they are boneless, or that they contain no bones. It will be noted that with respect to "Boned Chicken" and "Boneless Chicken Fricassee" it states that there are "No bones"; but with respect to "Boned Turkey," that it is "carefully boned." Two kinds of fricassee were advertised: "Boneless Chicken Fricassee" with "No bones," "Chicken Fricassee," with no reference to bones.

Plaintiff testified that prior to the purchase of the can of "Boned Chicken" he had read advertising of defendant Swanson's products similar in form and content to that in the ad of June 18, 1953. Defendants did not introduce any evidence.

It is apparent that the court adopted the theory of the defendants that the term "Boned Chicken" was merely descriptive of the manner in which the product was prepared and packaged and that it did not constitute a warranty that

the contents of the can were wholly free from bones. This, they contend, would be the understanding the general public would receive from the description.

Mr. Williston in 1 Williston on Sales, Revised Edition, pages 532, 533, says: "It is true that where the bargain relates to specific goods, which are known to the buyer, words which can properly be understood only as stating in the bargain what are the specific goods on which the parties have agreed, not as stating directly or indirectly some fact about them as an inducement to the purchase, may create no warranty. The reason for this is not because the words are descriptive, but because the buyer does not rely on the description as a basis for his purchase. To justify this conclusion, however, it should be clear that the words of description are reasonably to be understood only as a means of identification, not also a representation of kind or quality. The same words may well serve both purposes."

There are a great many such descriptive terms in common use such as "Fireproof," "Stainless," "Rustproof," "Nonskid," "Punctureproof," "Nonbreakable," "Waterproof," "Shelled," "Boneless," etc. Such a list could be extended to great lengths. ■ Descriptive names constitute a warranty as to the general characteristics of the article and that it is substantially what the name represents it to be. They do not, as a rule, amount to a representation of perfection.

■ The rule is stated in *Diebold Safe & Lock Co.* v. *Huston,* 55 Kan. 104 [39 P. 1035, 1037, 28 L.R.A. 53] : "There is no doubt, under the authorities, that the article sold must answer in kind to the description under which it is sold, and that there is an implied warranty that the article delivered is such an article as the name under which it is sold indicates. When, however, the question arises whether an article is of a particular quality or degree of excellence, unless it is designated by some term which is descriptive of the article and calls for a particular quality, the general rule is that no warranty of quality will be implied."

Defendants say "The manufacturer's express warranty is merely to the extent that the chicken has been boned and that all bones such as the leg, thigh, wing and other bones which carry identifiable structural names, instead of parts or fragments of such identifiable names, have been removed. . . . While it is true every manufacturer uses every possible precaution to see that no slivers or fragments of bone of any kind become a part of this product, nevertheless it is humanly

impossible to be one hundred per cent positive that all such bone fragments have been removed. . . . Furthermore, defendants did not expressly warrant that the product was free from chicken bones in any event. Merely because the word 'boned' appears on the label does not imply that the product is entirely free from bone fragments which are normal to the product." etc.

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. . . ." (Civ. Code, § 1732; *Stott* v. *Johnston,* 36 Cal.2d 864, 869-870 [229 P.2d 348, 28 A.L.R.2d 580].)

■ Any representation as to special quality made by a seller to induce a sale on which a buyer relies is a warranty, especially where inspection by the buyer is not possible and the seller knows the quality of the goods and the buyer does not. (77 C.J.S. 1175, § 324 c. See *Flint* v. *Lyon,* 4 Cal. 17, 21, in which the use of the word "Haxall" in the salenote for flour amounted to a warranty that the flour was of that brand; *Webster* v. *Klassen,* 109 Cal.App.2d 583, 590 [241 P.2d 302], in which the term "Arthur Johnson, Double O's rating, Washington seed" was held to be an express warranty that the seed potatoes were of that grade; *Brandenstein* v. *Jackling,* 99 Cal.App. 438, 446 [278 P. 880], in which the term "No. 1 rice" was held to be an express warranty of quality; *Porter* v. *Gestri,* 77 Cal.App. 578, 582 [247 P. 247], in which the term "dried black grapes" was held to be an express warranty that the grapes were of the black variety; *Pacific Feed Co.* v. *Kennel,* 63 Cal.App. 108, 112 [218 P. 274], in which the description of beet pulp as "number one" and as "first class" was held to be an express warranty of quality; *Newhall L. & F. Co.* v. *Hogue-Kellogg Co.,* 56 Cal.App. 90, 95 [204 P. 562], in which the description "Wilson's Improved Bush lima bean" was held to be an express warranty as to a variety of seed; *Firth* v. *Richter,* 49 Cal. App. 545, 548 [196 P. 277], in which the term "Valencia orange trees" was held to be an express warranty that the trees were of that description and that they would bear "Valencia" oranges; *Barrios* v. *Pacific States Trading Co.,* 41 Cal.App. 637, 639 [183 P. 236], in which the term "Export-cured boneless codfish" was held to be an express warranty of quality; 22 Cal.Jur. 994, § 69.)

■ The tendency of the modern cases is to construe liberally in favor of the buyer language used by the seller in

making affirmations respecting the quality of his goods and to enlarge the responsibility of the seller to construe every affirmation by him to be a warranty when such construction is at all reasonable. (*Luitweiler etc. Co.* v. *Ukiah etc. Co.,* 16 Cal.App. 198, 206 [116 P. 707, 712].)

██ The representation in the newspaper advertisements may be considered a part of the contract of sale. (*Dugan* v. *Phillips,* 77 Cal.App. 268, 275 [246 P. 566]; Anno: 28 A.L.R. 991, 992; 158 A.L.R. 1413.)

Defendants' argument is centered upon the use of the word "boned" on the label of the can. Little is said of the use of the statement "no bones" in the advertising. ██ The question is whether the statement that "boned chicken" contained "no bones" would reasonably be understood by the buying public to mean that the principal bones had been removed but there might be fragments of bone remaining or that all bones, large and small, and all pieces of bone had been removed. From a strictly anatomical standpoint it may be said that if a leg bone of a chicken has been removed with the exception of small fragments the leg bone has been removed; but the fragments of bone that remained would be "bone" to anyone who might attempt to swallow them. "No bones," no doubt, means to the manufacturer that great care has been used to remove all bones and all pieces of bone, but we think it would mean to a buyer that no bones whatever would be found in the product. Unless it can be said that a small piece of bone is no bone at all when it sticks in one's throat it cannot be said that a product which contains one or more bone fragments contains no bones. And with respect to the theories of the defendants it may be asked how many bone fragments would be permissible without contradicting the representation that there were no bones. Defendants argue that it is impossible to extract the bones of a defunct chicken without leaving in the remains small slivers or pieces of bone and that if they are held to liability under such facts as were in evidence here it will be impossible for them to continue the processing and sale of boned or boneless poultry and that they and many processors of similar products would be forced out of that business. We do not believe this dark outlook is justified, but even if Swanson and other manufacturers they mention may find it necessary or wise to change their methods of doing business this would be no reason for abrogating the principles of law under which they must operate.

■ Plaintiff testified that his understanding at the time he purchased the "BONED CHICKEN" was "just what the reading on the label implied, chicken without bones." On motion of defendants this testimony was stricken, although there was no objection to the question as to what his understanding was. In our opinion, the ruling was erroneous. The evidence was admissible for the purpose of showing that plaintiff, the buyer, relied on the affirmation on the label that the can contained chicken from which the bones had been removed. (Civ. Code, § 1732; *Cf. Baxter* v. *Ford Motor Co.,* 168 Wash. 456 [12 P.2d 409, 412, 88 A.L.R. 521]; *Beckett* v. *F. W. Woolworth Co.,* 376 Ill. 470 [34 N.E.2d 427].)

■ Our conclusion is that the label on the can coupled with the representation in the newspaper ads that the contents contained no bones, constituted an express warranty and that the same was breached. If there could be a doubt as to the meaning of "boned chicken," it was removed by the statement that it contained no bones.

The brief of the defendants does not point out any ground of distinction between the responsibility of Swanson and Sons and Food Company with respect to the express warranty. We have not considered that question.

The judgment is reversed.

Wood (Parker), J., and Vallee, J., concurred.