Mildred Marie YOUNG, individually and Danny Lee Young, David Ray Young and Daniel Ray Young, through their guardian ad litem, Mildred Marie Young, Appellants,

v.

AEROIL PRODUCTS COMPANY, Inc., a corporation, Structual Material Company, a corporation and Deryl S. Yundt, Appellees.

No. 15363.

United States Court of Appeals
Ninth Circuit.

Sept. 17, 1957.

186

Arlo E. Rickett, Jr., Pomona, Cal., for appellants.

Eugene S. Ives, Los Angeles, Cal., for appellees.

Before LEMMON, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

This was an action for wrongful death based on diversity of citizenship.[1] It was tried by the District Court sitting without a jury. Plaintiffs, all citizens of the State of Texas, are the widow and minor children of Herbert Weldon Young, deceased, who met a tragic and violent death on March 3, 1954, when a portable elevator collapsed as it was being prepared for removal from a house-building job in Los Angeles County.

Some description of the parties named, and those before the Court, seems essential.

The elevator had been manufactured by Sam Mulkey Co., Inc., a Missouri corporation, not served as a defendant. The Aeroil Products Company, Inc., a Delaware corporation, doing business in California, was named and served. It had assembled the manufactured portable elevator in Los Angeles. H. L. Weigert (not a defendant), was a roofing contractor, living in Los Angeles County, California, who employed the decedent. Weigert purchased the portable elevator from Structural Materials Company, a California corporation (which never had had physical possession of the equipment but which had in turn paid Aeroil Products Company for the machinery). Aeroil Products delivered the portable elevator directly to Weigert, decedent's employer, on July 7, 1953. Deryl S. Yundt, a defendant, was Pacific Coast Manager of Aeroil Products Company at the time of the purchase of the elevator.

Originally Roofmaster Inc., a California corporation, had been named a defendant. A motion was entered at the end of plaintiffs' case, granting a dismissal as to this defendant upon the ground that no cause for relief was shown as to such defendant.

Plaintiffs in their complaint alleged defective design, defective construction, an inherently dangerous product, and that the portable elevator was falsely represented to be "simple to operate and move, that it was stable, * * * without po-

1. 28 U.S.C.A. § 1332.

tential hazards, and \* \* \* could be easily moved by one man." They sought recovery on two different theories of civil liability, negligence and breach of warranty.

Prior to the purchase of this machine, the Aeroil Products Company, Inc. had distributed to various prospective purchasers a booklet designated:

"The Mulkey Commercial All-Steel Portable Elevator—It's Balanced!"
This booklet described in some detail, (through pictures and words hereinafter specified) the machine Weigert purchased, and Weigert had received a copy of such booklet.

Young used the machine in his work for Weigert, during all the time Weigert had owned the machine prior to the accident, a period of approximately eight months. Weigert first had explained to his employees, including the decedent, how the machine worked. He had used Plaintiffs' Exhibits 1 and 6 to so explain.

Two matters of importance occurred prior to the use of this machine on the day the decedent met his death.

(1) The machine on at least two occasions had capsized or fallen over or had been pushed over sideways by a motor vehicle. It had not then collapsed. According to invoices in evidence, it had been modified or repaired by welding or by replacing nuts and bolts on four occasions, to wit: on August 28, 1953; on December 31, 1953; on January 23, 1954; and, on February 11, 1954.

(2) On the first occasion (August 28, 1953), Mr. Weigert had had two pieces of eighteen-inch sheet iron welded to the bottom of the front end, "to raise the bottom of the elevator in use 18″ from the ground."

On the day the accident occurred, the elevator had been used to carry rock to a roof of a house about 18 feet above the street level and about 10 feet laterally from the curb. Young had worked on the roof removing the rock from the portable elevator. Baker, a fellow-employee, on the ground, had been loading the elevator. After work was completed,

Young climbed down the elevator, and he and Mr. Baker removed the motor from the portable elevator, and set it on the truck which was to tow the elevator, once it had been placed in its "folded down" position. Young raised the bottom of the elevator "several inches" (or "three or four inches"), stepped back one step, swung either to his right or his left, and "raised it waist high." The force of gravity brought the upper end down, threw Young in the air, and Young, as he came down, was caught between the hitch and the axle, so as to crush his head and kill him. In doing this, Mr. Young was handling the machine in the same way as he had customarily handled the machine for some several months, although there was testimony that he had been instructed "to always lower the elevator down to a 15 or 20 degree angle or lower before moving it."

Plaintiffs relied, in their attempt to establish liability, on the testimony of an expert witness. To rule on plaintiffs' legal position it is necessary to have some understanding of his testimony. Unfortunately, plaintiffs' expert, Dr. Wood, testified before the trial court at a blackboard, and some of this testimony is not clear to one reviewing the facts in the absence of photographs of the diagrams placed on the blackboard. No copy of these blackboard diagrams is before us. Perhaps it is for this reason that the exact meaning of the testimony of plaintiffs' expert, and the effect caused by the addition of the two plates welded to the front of the elevator, is not clearly delineated by the written record before us. But we must proceed with the tools at hand.

Dr. Wood testified, in response to a hypothetical question, that there was an inherent defect in the machine; that when lifted by its lower end there was a height at which it reached an "unstable balance position, \* \* \* when the center of gravity of the whole machine is directly over the axle." With the weight of a man on the lower end, there is "a further point, a little higher, at which it would be at an unstable balance condition." The

dynamic aspects of the tipping-over action, he said, caused the falling elevator to strike with some impact, and the supporting struts to collapse.

The expert listed certain significant "quantities," which he took into consideration in coming to his conclusions, namely: (1) the front dimensions of the machine, (2) the weight of the machine and its distribution, (3) the height to which the elevator is elevated, (4) the contour of the surface upon which the machine rests, (5) the weight of the man holding on to the trailer hitch, (6) the position of the mean center of gravity.

The plaintiffs' expert testified that the forty-seven pound additional weight of the plates welded "shifts the position of the center of gravity of the entire system to the rear." He further testified that a force of a 129 pound lift was necessary to be exerted at the end of the hitch in order to raise the front or hitch end; which necessary force continually decreased as the end was raised until the center of gravity was over the axle, which was the "unstable point," at which no force was required to hold up the hitch. He computed this position as a raise of 218 inches; "in other words, once the machine (sic) is lifted up 218 inches the machine is in balance all by itself." [Tr. 188] With a 150 pound man holding on to the hitch end, this point of balance was estimated at 65 inches, or 5 feet 5 inches above the ground. "Assuming in this particular case that the man was not able or didn't exert his full weight before this point (indicating) was reached, then the machine continues to tip over. * * * there is no possibility of a tipping-over action until the lower end had been raised up to a certain distance, (as) * * * testified to." Without the eighteen-inch plates added, the center of gravity was 8'6" off the ground. With them added, the center of gravity would be approximately 8'11" off the ground.

The defendants offered no evidence.

On this factual basis, the court below denied recovery on both causes of action:

negligence and breach of warranty. It made voluminous findings of fact and conclusions of law. Since the two theories of liability postulated by appellants involve somewhat different considerations they will be discussed separately.

 Preliminarily, it should be noted that the law of California governs the substantive issues in this case. It was in that state that the machine was purchased and used and where the fatal accident occurred. It is our limited duty to discern the substantive law of California on the issues in controversy and to apply it accordingly. Our task is not to innovate, but to imitate. Where the course of the law remains uncharted, as is the situation with several of the issues in the instant case, it is the duty of the Federal court to examine germane precedents and analogous decisions in California and to endeavor to ascertain from those decisions how the California courts would decide the case at bar. In the absence of direct authority, we must heed such guideposts as the state courts have constructed, for even here true allegiance to the principle of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 precludes unrestrained and independent determination in a diversity case.

### Negligence

Appellants contend that the apparatus was negligently designed and constructed, that it was inherently defective, and that reasonable inspection on the part of Aeroil, the assembler, would have disclosed the defect. Appellees disclaim that the machine was negligently built and was defective, assert that there was no duty to test the machine for latent defects in construction and design, and urge further that any inspection that might have been required of them would not have revealed the alleged defect. They also argue that Mr. Young was negligent in his use of the machine and that such negligence was the proximate cause of his death. The District Court made exhaustive findings supporting in all respects the contentions of the appellees.

■ Although the purported defect lay in the construction or design of the machine and hence was traceable directly to Mulkey, the manufacturer, this fact alone does not necessarily absolve Aeroil, the assembler, Yundt, Aeroil's agent, or Structural Materials, the paper seller. In each instance, liability depends on whether the particular defendant owed a duty of care to Mr. Young which it breached.

We assume without deciding that Aeroil was under a duty to examine and test the machine after it had been assembled from the parts manufactured by Mulkey. Escola v. Coca Cola Bottling Co. of Fresno, 24 Cal.2d 453, 150 P.2d 436; Sheward v. Virtue, 20 Cal.2d 410, 126 P.2d 345; Kalash v. Los Angeles Ladder Co., 1 Cal. 2d 229, 34 P.2d 481. Yundt testified that no such inspection or testing was undertaken by Aeroil.

However, the predicate for liability based on failure to inspect is that reasonable inspection would have uncovered the defective condition. "Liability is imposed by the rules in question where the defective condition of the part used could have been discovered by reasonable inspection and tests and where these have been omitted." O'Rourke v. Day and Night Water Heating Co., 31 Cal.App.2d 364, 88 P.2d 191, 193. If such disclosure would not have ensued from testing the apparatus, it cannot be said that the failure to inspect or test was the proximate cause of the accident.

■ The District Court found that there was no defect and consequently that no inspection or examination which appellees might have been required to make would have revealed any. While appellants adduced expert testimony regarding the alleged defective condition of the machine, they introduced not a scintilla of evidence that a careful and prudent examination would have disclosed the defect. The burden of proof on this issue was on appellants. They did not sustain it.

■ Further, it is undisputed that Mr. Young was not handling the machine in accordance with Weigert's instructions, though he was operating it in the "customary" manner.[2] Customary conduct is an indicia of reasonable conduct, but the two are not equated either in fact or in law. The District Court could well have regarded this non-compliance with the employer's orders as negligent behavior on the part of the decedent. At least we cannot say under the circumstances that such a finding is clearly erroneous. The decedent's negligence, even if it were merely contributory rather than sole, would still bar an action for wrongful death by his heirs. Buckley v. Chadwick, 45 Cal.2d 183, 288 P.2d 12, 289 P.2d 242.

### Breach of Warranty

Appellants rely here on the ordinary implied warranties of sale and also on what they claim to be certain express warranties made in the brochures published by Mulkey and Aeroil.[3] The statements termed warranties by appellants are (1) that the elevator was "portable," (2) "balanced," and (3) that "one man can handle and operate." Appellants contend that these representations were

2. The instruction to "always lower the elevator down to a 15 or 20 degree angle or lower before moving it," supra. See Tr. p. 44.

3. Page 1: "The Mulkey Commercial All-Steel Portable Elevator—It's Balanced!"
 Page 2: "Only Mulkey offers you all these features * * *"
 Page 3: "They perform with amazing speed. Nationally advertised. Nationally accepted. Fully Guaranteed! It is truly the contractor's greatest friend and labor saver."

Page 4: "3 special features of the Mulkey Elevator.
Easily Maneuvered. Note touring position of 40 ft. elevator.
New improved winch assembly easily raises elevator with extensions.
Balanced undercarriage. Adjustable to accommodate extensions * * * balancing permits 1 man to handle and operate!"
[Plaintiffs' Exhibits 1 and 14]

false and were fatally relied upon by the decedent.

Any of numerous findings adverse to appellants would support the judgment below. We believe that the following grounds are dispositive of this facet of the appeal and therefore deem it unnecessary to engage in protracted discussion of each element of the cause of action and each possible defense.

██ First, we hold that appellants cannot hold any of the appellees to civil liability on any theory of implied warranty. No privity of contract existed between the decedent and any of the appellees. It is the law of California that privity of contract is an essential element of a cause of action based on implied warranty in all cases except those involving foodstuffs. Burr v. Sherwin Williams Co., 42 Cal.2d 682, 268 P.2d 1041; Klein v. Duchess Sandwich Co., 14 Cal.2d 272, 93 P.2d 799; Tremeroli v. Austin Trailer Equipment Co., 102 Cal.App.2d 464, 227 P.2d 923.

██ Nor can any of the appellees be held accountable on the basis of express warranty. We are considering here an area of the law which is in a state of flux in California. The law on this subject is developing and dynamic. The general rule has long been that express warranties were to be treated no differently than implied warranties and that in either case, privity of contract was indispensable, except, of course, in food cases. However, that no longer appears to be the law in California. In a break with the requirement of privity of contract analogous to that initiated by Judge Cardozo in the negligence area in Mac-Pherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, the California courts now apparently will impose liability for express warranties contained in labels or advertising matter and upon which the ultimate purchaser relied. Burr v. Sherwin Williams Co., supra; Lane v. C. A. Swanson & Sons, 130 Cal.App.2d 210, 278 P.2d 723; Free v. Sluss, 87 Cal.App.2d Supp. 933, 197 P.2d 854. The impetus for dispensing with

the requirement of privity of contract as well as the most forceful exposition of the argument for expansion of strict liability is Justice Traynor's concurring opinion is Escola v. Coca Cola Bottling Co., supra. But it must be observed that while the California courts have broadened considerably the scope of strict liability no case has ever gone so far as to hold that one who was not a purchaser of the product at some juncture in its course through merchandise channels and consequently who had no pecuniary interest in the product was included within the class of persons who could rely on express warranties. Such a person was the decedent. Accordingly, the law would have to turn another corner to encompass the decedent. Whether the California courts are prepared to enlarge the class of protected persons that much further we need not here answer because of the succeeding critical flaw in appellants' position.

The District Court found, and its finding is supported by the evidence, that "Weigert had added to the conveyor an undercarriage or riser which changed the horizontal and vertical center of gravity of said conveyor," and "had lowered the hitch"; that these two actions had created a hazard of overbalancing said conveyor when lifting the hitch end of said conveyor high enough to cause said conveyor to be moved. This proof that the purchaser altered the conveyor by adding to its height and by changing the position of the hitch which modified the center of gravity, and also that he had had extensive repairs made on the machine after it had twice been damaged indicate that a far different product had been created than that which was purchased. At the time of the tragic accident, the thing being used was not the thing sold.

In the case of Collum v. Pope & Talbot, Inc., 135 Cal.App.2d 653, 288 P.2d 75, the District Court of Appeal held that strict liability could not be imposed where the thing alleged to be defective had been altered substantially between the time it left the control of the party

sought to be held responsible and the time of the injury.

That case involved lumber, a non-manufactured article, but the reasoning of the court seems equally applicable to manufactured products. The court there stated:

> "Plaintiffs * * * cut and fitted the ends * * * and nailed them in place * * *. In the process they made significant changes. These changes which plaintiffs made * * * were such as to seem to make it inequitable for the law to treat it as the very same article which the mill owner sold to the dealer, and the dealer sold to the contractor, when the urge is to extend an exception to the rule which requires privity of contract. *Any express warranty seems clearly precluded by these changes.*" 288 P.2d at page 80. (Emphasis added.)

To hold any of the appellees strictly accountable in light of the alterations and repairs made on the machine would not comport with the principle enunciated in Collum v. Pope & Talbot, Inc. That alone is a sufficient basis for affirming the judgment below. Accordingly, even if we were to decide, which we do not, that the statements contained in the pamphlets constituted express warranties; that they were materially untrue; that Mr. Young was within the class of persons who could rely on them; and, that he did in fact rely on them, it would avail appellants nothing.

It should be noted also that we have already held that the evidence was sufficient to support the finding that the decedent was himself negligent. We have not been referred to, nor could independent research find, any California case holding that negligence on the part of the person injured is a defense to an action based on breach of warranty. For that reason, the opinion on this aspect of appellants' action does not rest on that ground.

Having decided the above points adversely to appellants' position, the next point, that "the Court erred in not awarding damages to the plaintiffs in the sum prayed for in the Complaint," need not be considered.

The final point, that "the Findings of Fact by the Trial Court are not supported by the Evidence" is disposed of under our discussion above. We find the court's findings are clearly supported by the evidence in the case.

The judgment is affirmed.